(No. 37150.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT W. CLAY, Plaintiff in Error.

*Opinion filed February 1, 1963.*

28

Robert W. Clay, *pro se.*

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, and Edward J. Hladis, and James R. Thompson, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice House delivered the opinion of the court:

Robert W. Clay was indicted in the criminal court of Cook County for the unlawful sale of narcotics. The court found him guilty in a bench trial and fixed his sentence at 10 to 12 years in the penitentiary. On this writ of error he contends that his counsel's cross-examination was unduly restricted by the court, that the prosecution knowingly used

perjured testimony, that his guilt was not proved beyond a reasonable doubt and that the trial judge exhibited prejudice against him.

The prosecution's evidence shows that about 7 o'clock in the evening on July 5, 1959, police officers, Lee Harvey and James Parker, made arrangements for Bobbie O'Neil (a female) to act as purchaser in a controlled sale of narcotics. After her sweater and purse were searched, she was given four one-dollar bills, the serial numbers of which had been recorded. She then went to the corner of 41st and State streets where she met a male person by the name of Walker and had a conversation with him. They walked to a tavern on 39th Street where they met defendant. The three of them left the tavern and went to 41st and State streets. There defendant went into a building. When he returned, he gave O'Neil two bags and she gave him the money. She then gave the bags to officer Harvey and defendant was arrested. The four one-dollar bills were found on defendant and the bags contained heroin. Officer Harvey testified that defendant admitted the sale when he was arrested.

The defendant testified that he was drinking beer in the tavern on 39th Street at about 3:30 or 4:00 P.M., when O'Neil and Walker entered. Walker, whom he knew to be a narcotic addict, told him that O'Neil wanted liquor, that four dollars was not enough and that she also wanted carfare out of the sum. Defendant agreed to lend her two dollars and give her carfare. The three left and went to 41st and State streets. Defendant then went into a grocery store. At that time James Sanders arrived in a car. Defendant said he had called Sanders to come push his car which had been stalled for two days with a dead battery. Defendant bought some ice cream in the store, walked back to O'Neil, gave her twenty-five cents and got into Sanders's car. Officer Harvey then arrested him and Sanders. He said that officer Harvey told him he would get 10 years if he did not sign a statement against Sanders.

It is argued that several of the trial court's rulings unduly restricted the cross-examination of the prosecution's witnesses. The first of these rulings occurred after O'Neil stated she had not been paid to act as an informer. Counsel then stated, "In other words, you do it for the good of the country, is that correct?" Objection to this question was sustained. While we agree with defendant that he may go into the matter of whether promises of leniency were made to a witness, we do not agree that the question propounded was directed to this end. The question appears to be rhetorical and shows counsel's disbelief in the witness's previous answer that she was not paid to act as an informer. No questions dealing with possible promises of leniency were asked and the court did not therefore restrict cross-examination on that point.

It is also argued that the trial court would not permit counsel to ask officer Harvey to describe the object which he testified he saw defendant pass to O'Neil. The record shows that counsel asked officer Harvey, "What kind of package?" to which he replied, "I don't know sir." Counsel was reminded that the witness used the word "object" and not "package," to which he replied, "You say it was as bright as it is now. If you see an object from that distance, you certainly know something about it?" Counsel then asked if it was a box or newspaper and said they might have been shaking hands. The witness had stated that he did not know what the object was and the trial court properly sustained objection to this further line of questioning as being argumentative.

On another occasion defense counsel asked officer Harvey if O'Neil had ever before acted as an informer for Parker to which he replied, "I don't know." Counsel then asked, "You normally would know, wouldn't you?" Objection to this question as being argumentative was properly sustained.

Another time after counsel received a negative answer

to the question of whether officers Harvey and Parker had worked together prior to July 5, 1959, counsel asked, "How did you happen to be together this particular evening?" Objection was properly sustained since there is nothing to show that the question was material or relevant. We are of the opinion that the trial court did not unduly restrict the cross-examination of the prosecution's witnesses.

Defendant then contends that several inconsistencies in the testimony of officer Harvey show that his conviction was based on false testimony. In an effort to impeach officer Harvey, defense counsel asked him if he was asked the following questions and gave the following answers at a preliminary hearing.

"Q. What type of search did you make?

A. We ascertained, we checked his pockets, wallet, to make sure that he had no money or narcotics on him.

Q. You searched all his pockets and his wallet, is that correct?

A. Yes, sir.

Q. And where did you search him?

A. At 37th and Michigan and again at 40th and Wabash."

The record shows that the informer was a female, and officer Harvey testified that her purse and sweater were searched at 41st and Wabash. He stated that he did not remember using the male gender when testifying at the preliminary hearing.

Defendant has taken these selected questions and answers from the transcript made at the preliminary hearing and gleans from them the idea that officer Harvey was stating that a male person acted as purchaser. The name of the informer (Bobbie O'Neil) could easily be confusing as to the sex of the person who acted as purchaser. If officer Harvey had in fact previously testified that a male person acted as purchaser, it would apparently have been an easy matter to show this by reading more of the transcript from

the preliminary hearing. Nor do we attach great significance to the fact that he said he searched the informer at 37th and Michigan and again at 40th and Wabash when testifying at the preliminary hearing and that he said he searched her at 41st and Wabash when testifying at the trial. At the trial he said he searched her at 41st and Wabash and was not asked about any other search on either direct or cross-examination.

Minor discrepancies in testimony taken at two different times is not unusual. (*People* v. *Thomas,* 20 Ill.2d 603.) The discrepancies shown by this record do not destroy the credibility of officer Harvey but go only to the weight to be given his testimony.

It is next contended that defendant was not proved guilty beyond a reasonable doubt. In support of this contention defendant argues that the search of O'Neil's sweater and purse did not constitute a thorough search which is a prerequisite to a valid conviction of unlawful sale of narcotics. A prior search for money and narcotics of the purchaser in a controlled sale of narcotics is not essential to a conviction. (*People* v. *Guido,* 25 Ill.2d 204.) The thoroughness of the search only went to the weight to be given to the testimony of the prosecution's witnesses.

To further support this contention defendant asserts that there were a number of contradictions between the testimony of O'Neil and officer Harvey. We have carefully examined these alleged contradictions and find that they do not exist. We are of the opinion that there was sufficient evidence to find defendant guilty beyond a reasonable doubt.

Defendant's final contention is that the trial judge exhibited prejudice against him. He has set forth a number of the rulings on objections to questions on cross-examination as showing prejudice. We have already considered these rulings and have determined that they were correct. Other statements made by the court which allegedly show prejudice were merely clarifications of the evidence or sug-

gestions to defense counsel as to how to properly phrase his questions. These remarks do not show the court was prejudiced.

After the verdict was announced, defendant entered into a colloquy with the court and stated, "In other words, you don't believe that the officer would lie?", to which the court replied, "No, sir, I don't." This statement by the court merely made explicit what was otherwise implicit in his finding of guilty and does not show prejudice. See *People* v. *Faginkrantz,* 21 Ill.2d 75.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*