THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EDWARD RUCHEINSKI, Defendant-Appellant.

First District (5th Division)   No. 1—88—0267

Opinion filed December 27, 1991.

Randolph N. Stone, Public Defender, of Chicago (Elizabeth Burke and Jeffrey M. Howard, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Carol Gaines, and Joseph W. Colaianne, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Defendant, Edward Rucheinski, and codefendant, Stephen Wieglos, were charged with delivery of more than 30 grams of cocaine. Defendant was tried separately by a jury and was found guilty based on a theory of accountability. The trial court sentenced defendant to six years in prison. Defendant filed this appeal. We consider (1) whether the trial court abused its discretion when it allowed the State to introduce evidence of defendant's prior crime; (2) whether the State proved the elements of defendant's accountability and whether the trial court erred by not instructing the jury on defendant's theory of nonaccountability; and (3) whether the trial court abused its discretion admitting the hearsay declarations of the codefendant under the co-conspirator exception to the hearsay rule.

We affirm.

Relevant to our disposition are the following facts as disclosed by the record. Defendant, Edward Rucheinski, and codefendant, Stephen Wieglos, were charged by information with delivering more than 30 grams of cocaine to an undercover narcotics agent on July 5, 1985. Prior to trial, Rucheinski filed a motion for severance. The trial court granted the motion, and the two defendants were tried separately. This appeal addresses only the trial of Rucheinski (defendant).

Prior to trial, defendant filed a notice of his intent to present the defense of entrapment. The State informed the court of its intention to introduce evidence that less than a month prior to his arrest defendant delivered .8 grams of cocaine to the same undercover narcotics agent who arrested defendant for the instant crime. After hearing arguments of counsel, the trial court ruled that it would admit the evidence of the prior crime on the alternative

grounds that (1) defendant filed a notice of the entrapment defense and (2) the evidence was proof of *modus operandi*. Also prior to trial, the State informed the court that it intended to introduce hearsay declarations of codefendant, Wieglos, under the co-conspirator exception to the hearsay rule. The trial court stated it would make its ruling upon hearing the evidence presented at trial.

At the jury trial, the State presented three witnesses. The defendant did not testify, and he did not present other witnesses on his behalf.

The undercover narcotics agent and arresting officer, Eric Bjankini (Eric), testified for the State as follows. On June 12, 1985, Eric and a confidential informant parked an unmarked car at a Wendy's restaurant on the northwest side of Chicago. The defendant arrived at the restaurant in another vehicle, parked his car, and walked to the passenger side of the unmarked car. The informant introduced defendant to Eric and then went into the restaurant. Defendant entered the unmarked car and sat next to Eric. Eric and defendant discussed the purchase of one gram of cocaine. Eric handed defendant $100, and defendant handed Eric a folded paper packet containing white powder. Defendant told Eric the paper packet contained "quality cocaine." The powder was later examined and determined to contain, in fact, .8 grams of cocaine.

During this same transaction, Eric and defendant discussed future purchases of cocaine. Defendant told Eric that "ounce amounts" of cocaine could be obtained for $2,500 per ounce. Defendant gave Eric his page number and left the car. The entire transaction took about five minutes.

Three days later, Eric contacted defendant on his pager. Immediately, defendant returned the call, and the two again discussed narcotics and future purchases of cocaine. Defendant told Eric that pursuant to their June 12 discussion he might be able to obtain "ounce amounts of cocaine." Eric gave defendant his own page number and defendant stated that he would contact him if there were further developments concerning the proposed purchase.

About 10 days later, defendant paged Eric, who in turn called defendant. Defendant stated that Eric could purchase four ounces of cocaine for $8,600 at a future date. Eric told defendant he would like to conduct the transaction sometime around July 4. A few days later, after defendant paged Eric, defendant told Eric the July 4 date appeared possible.

On July 3 defendant paged Eric again and informed him that he could purchase the four ounces of cocaine that evening; that Eric

should come by his house, located at 2616 North Meade Street in Chicago; and that the two would then drive to another location to pick up the cocaine. Defendant confirmed the $8,600 price. At this point, Eric assembled his surveillance team, obtained $8,600 in prerecorded funds, and proceeded to defendant's house.

When Eric arrived at defendant's house, defendant got into the unmarked car and directed Eric to drive to the southside of Chicago. During the drive, the two discussed the financial benefits of the proposed cocaine purchase and the possibility of a long, permanent relationship. Defendant directed the car to a single-family residence located at 6128 80th Place, in Burbank, Illinois. The two were admitted into the home by the codefendant whom defendant introduced as Steven Wieglos.

At this point in Eric's testimony, the State informed the court that it intended to introduce certain hearsay declarations of codefendant Wieglos under the co-conspirator exception to the hearsay rule. The court ruled that the State had not yet proved the existence of a conspiracy. However, the court allowed the State to make an offer of proof on the issue of the conspiracy. Therefore, Eric continued his testimony outside the presence of the jury.

Eric testified that as he and defendant entered the home on July 3 Wieglos said that he did not have the cocaine at that time. Wieglos instructed Eric and defendant to leave the home and return in one half hour. The two complied, driving to a nearby hot dog stand. While the two waited at the hot dog stand, Eric handed defendant an envelope containing the $8,600 in prerecorded funds. Eric told defendant that the money was for the four ounces of cocaine and that he could count it if he wanted. Defendant counted the money, made no objection, and gave it back to Eric. After 30 to 40 minutes passed, the two returned to Wieglos' home but Wieglos did not have the cocaine. Eric told Wieglos and defendant that, if the cocaine came later that evening, Wieglos should give it to defendant to hold for him. Eric left the home, leaving defendant and Wieglos together.

Two days later, on July 5, defendant paged Eric. Eric telephoned defendant and asked whether the purchase would take place that day. Defendant stated that there would be a delay. Eric told defendant to give Wieglos his page number and that he would speak directly with Wieglos.

Later that same day, Wieglos did page Eric directly and the two spoke on the phone. Wieglos said that he had to talk to another individual before he could get the cocaine, but he would have the four

ounces by 3:30 p.m. Eric told Wieglos that he would meet defendant in time to conclude the purchase. Eric then telephoned defendant and the two arranged to meet near Wieglos' home. When they met, Eric handed defendant the envelope containing the $8,600. Defendant again counted the money and gave it back to Eric. The two drove to Wieglos' home. Eric parked in front of Wieglos' home and placed the $8,600 in the trunk of the unmarked car.

Once in the home, Wieglos directed them to the kitchen. Eric saw a scale, a mound of white powder, and a clear plastic baggie positioned on a table. Wieglos instructed Eric to weigh the baggie and then to weigh the baggie with the cocaine, which he did. Defendant told Wieglos that he had counted the money and that Eric had the money out in his car. Eric asked if he could take the baggie containing the cocaine out to his car.

At this point in Eric's testimony, the State asked the court to make a finding on the issue of the conspiracy. After defense counsel cross-examined Eric, the court ruled that the State proved the existence of a conspiracy between defendant and Wieglos as of the July 3 occurrences. The jury returned to hear Eric's testimony.

Eric repeated his testimony as stated during the offer of proof. He added that, after he took the cocaine out to the unmarked car on July 5, he placed the cocaine in the trunk and then took out his weapon. The opening of the trunk constituted a prearranged signal, whereupon Eric and other surveillance agents entered the home and arrested both Wieglos and defendant. Eric advised both men of their *Miranda* rights. Eric then asked Wieglos if there was additional cocaine or guns in the house. Wieglos directed Eric to his bedroom, where Eric found the scale, additional clear plastic baggies with white powder residue, and $300 in cash. Later examination determined that the baggie Eric placed in the trunk contained 111.7 grams of 92% pure cocaine.

At the close of the State's case, the trial court denied defendant's motion for a directed verdict.

At the jury instruction conference, defendant offered two instructions which stood for the proposition that a defendant is not legally accountable for the conduct of another if before the commission of the crime charged he withdraws. The trial court refused both instructions. The trial court did accept a jury instruction stating that the evidence of the June 12 crime should only be considered on the issue of defendant's intent, motive, and design.

The jury found defendant guilty of delivery of a controlled substance in excess of 30 grams. The trial court sentenced defendant to six years in prison. Defendant appealed.

OPINION

We first address whether the trial court erred by admitting the evidence concerning defendant's unindicted June 12 sale of cocaine to Eric. Because defendant did not present the defense of entrapment, we focus our review of the trial court's admission of the evidence based on whether it constituted proof of *modus operandi*.

*Modus operandi* means, literally, "method of working." In its legal sense, it refers to a pattern of criminal behavior so distinct that separate crimes or wrongful conduct are recognized as the work of the same person. (*People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 485 N.E.2d 1292.) If evidence of other crimes is used to prove *modus operandi*:

> "there must be some clear connection between the other crime and the crime charged which creates a logical inference that if the defendant committed one of the acts, he may have committed the other act. This inference of identity does not arise from the mere fact that the crime charged and the other crime share certain common features or marks of similarity, for it may be that these similarities are shared not only by the crime charged and defendant's other crime, but also by numerous distinct crimes committed by persons other than the defendant. Rather, the inference is created when both crimes share peculiar and distinctive common features so as to earmark both crimes as the handiwork of the defendant. [Citation.] There must be some distinctive features that are not common to most offenses of that type. [Citation.] While there must be a strong and persuasive showing of similarity between the other crime and the crime charged *** it is not necessary that the crimes be identical for the other crime to be admitted in evidence to prove *modus operandi*." *People v. Kimbrough* (1985), 138 Ill. App. 3d at 486-87, 485 N.E.2d at 1297.

Defendant raises three arguments that the evidence of the June 12 crime should not have been admitted to prove *modus operandi*. We address each argument separately.

■■ First, defendant argues there was no strong connection between the June 12 crime and the July 5 crime. We disagree. Several factors suggest a strong connection between the two crimes. In the

first crime, while in Eric's unmarked car, defendant exchanged cocaine for money. Defendant stated that the cocaine was "quality cocaine" thereby indicating his experience dealing with cocaine. More importantly, during the first crime defendant and Eric discussed future purchases of cocaine. Defendant specified that a future purchase could involve "ounce amounts of cocaine." Defendant also gave Eric his page number.

The facts pertaining to the second crime show that defendant's page number was used to initiate the contact. Defendant and Eric continued to discuss future purchases of "ounce amounts of cocaine." In fact, four ounces were agreed upon. Defendant introduced Eric to Wieglos, and defendant was carefully included in each effort to close the sale. More importantly, defendant and Eric discussed the financial benefits of the proposed cocaine purchase and the possibility of a long, permanent relationship. Defendant reassured Wieglos that Eric had the money for the purchase.

In sum, we believe that the evidence of defendant's June 12 crime created a logical inference that defendant committed or participated in the commission of the July 5 crime. In fact, defendant's continuous and pivotal roles earmarked each sale of cocaine to Eric as the handiwork of defendant.

Second, defendant argues that where evidence of other crimes is admitted to prove *modus operandi*, the identification of the defendant must be at issue. Here, defendant maintains that there was no question as to his identification. However, evidence of other crimes may be relevant not only to the issue of who committed a crime, but also to the issue of whether a crime was committed at all. (*Kimbrough*, 138 Ill. App. 3d 481, 485 N.E.2d 1292.) The evidence of the June 12 crime tended to prove that defendant was in the business of selling cocaine and that he had arranged for the July 5 purchase. In light of this evidence, the jury was able to fairly decide whether defendant was merely present on July 5 or whether defendant was participating in the commission of a crime.

Third, defendant argues that the trial court erred by admitting the evidence of the June 12 sale because the prejudicial effect of the evidence outweighed its probative value. While it is true that a trial court must balance the prejudicial effect of such evidence against its probative value (*People v. Vazquez* (1989), 180 Ill. App. 3d 270, 535 N.E.2d 981), we do not believe that the trial court erred here. The evidence provided a complete picture of defendant's participation in the July 5 crime and addressed defendant's position that he was merely present at Wieglos' home. The evidence also ex-

plained the arresting officer's reasons for commencing the surveillance. (*People v. Batinich* (1990), 196 Ill. App. 3d 1078, 554 N.E.2d 613.) Finally, the jury was instructed to consider the evidence of the June 12 crime only to the extent that it addressed defendant's intent, motive, or design. We conclude that the prejudicial effect of the evidence did not outweigh its probative value.

As a reviewing court, we are reminded that a trial court's decision concerning the admission of evidence of prior crimes rests in the court's discretion and will not be disturbed absent an abuse of that discretion. (*People v. Vazquez* (1989), 180 Ill. App. 3d 270, 535 N.E.2d 981.) We hold that the trial court did not abuse its discretion by admitting the evidence of the June 12 crime.

■ We next address whether the State failed to prove defendant's guilt based on the theory of accountability. To sustain a conviction for unlawful delivery of a controlled substance based on a theory of accountability, the State must establish beyond a reasonable doubt that: (1) the defendant elicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offense; (2) this participation took place before or during the commission of the offense; and (3) there was concurrent, specific intent to promote or facilitate the commission of the offense. Ill. Rev. Stat. 1987, ch. 38, par. 5—2; *People v. Valen* (1989), 183 Ill. App. 3d 571, 539 N.E.2d 261.

Here, we believe the evidence satisfied the requisite elements for accountability. A summary of the evidence shows that defendant elicited the purchase of the four ounces of cocaine directly with Eric; his participation took place both before and during the July 5 purchase; and he demonstrated a specific intent to facilitate the purchase by directing Eric to Wieglos' home and by assuring Wieglos that Eric had the money for the purchase. Accordingly, we hold that defendant was properly held accountable for the July 5 crime.

Furthermore, we find no evidence in the record which would have entitled defendant to a jury instruction concerning the withdrawal exception to the accountability theory. Therefore, the trial judge did not err by refusing the corresponding jury instructions offered by defendant.

■ Finally, we address whether the trial court erred by admitting the hearsay declarations of the codefendant, Wieglos, under the co-conspirator exception to the hearsay rule. The admission of statements by a co-conspirator which would otherwise be barred by the hearsay rule requires that the State establish by a preponder-

ance of the evidence the existence of a conspiracy by nonhearsay evidence. *People v. Deatherage* (1984), 122 Ill. App. 3d 620, 461 N.E.2d 631.

A conspiracy is defined as two or more persons engaged in a common plan to accomplish a criminal goal or to reach a common end by criminal design. (*People v. Pintos* (1988), 172 Ill. App. 3d 1096, 527 N.E.2d 312.) The existence of a conspiracy may be inferred from all surrounding facts and circumstances, including the acts and declarations of the defendant. *Pintos*, 172 Ill. App. 3d 1096, 527 N.E.2d 312.

Defendant argues that there was no independent, nonhearsay evidence to show that defendant participated in a conspiracy as of the July 3 occurrences. We disagree. A summary of the evidence shows that defendant informed Eric that the four-ounce purchase could transpire on July 3 and that it would cost $8,600. Defendant told Eric to drive to his house but that they would have to drive to another location to pick up the cocaine. Defendant directed Eric to Wieglos' home. Defendant introduced Eric to Wieglos. Unable to purchase the cocaine, defendant and Eric left for 30 to 40 minutes. During this time defendant counted the $8,600. The two returned to Wieglos' home but the purchase was not made that day. Eric left the home, leaving defendant and Wieglos together.

On July 5 defendant called Eric to discuss the purchase. Eric requested to speak directly with Wieglos. Later that day, Eric met defendant and the two drove to Wieglos' home. Defendant again counted the $8,600. When they arrived at Wieglos' home, Eric was shown the cocaine and paraphernalia. While Eric weighed the cocaine, defendant told Wieglos that the money was in Eric's car. The purchase was completed.

We hold that the evidence, apart from the hearsay declarations of Wieglos, established by a preponderance of the evidence that defendant and Wieglos engaged in a common plan to accomplish the July 5 sale. Therefore, the trial court did not err by admitting the hearsay declarations of Wieglos as a co-conspirator exception to the hearsay rule.

Affirmed.

MURRAY and McNULTY, JJ., concur.