THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL LeCOUR, Defendant-Appellant.

First District (4th Division)    No. 1—94—0641

Opinion filed June 29, 1995.

Arnstein & Lehr, of Chicago (Patrick A. Tuite, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Ross M. Eagle, and Wendy Kaleta Skrobin, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

A jury convicted defendant, Daniel LeCour, of possession of cocaine with intent to deliver, arising from his participation in a transaction involving an undercover officer. On appeal, defendant argues that (1) the evidence was insufficient to sustain his conviction; (2) the court erred in admitting evidence of defendant's prior narcotics transactions; (3) defendant was denied due process because the State failed to produce a confidential informant who participated in the transaction for which defendant was on trial; and (4) prosecutorial misconduct deprived defendant of a fair trial.

During May and June of 1991, Officers Mark Wilkans and Tim Swanson orchestrated an undercover narcotics investigation with the help of a confidential informant. The informant notified Wilkans about a man by the name of Anthony Russo who would deliver quantities of cocaine. At Wilkans' request, the informant arranged a purchase of one-quarter ounce of cocaine through Russo.

On May 15, 1991, Wilkans and the informant drove in Wilkans' car to the parking lot of a Big Boy restaurant. There, the informant introduced Wilkans to Russo, who stated that the price of the cocaine would be $350. Wilkans gave the informant the money, and Russo and the informant departed in Russo's car for another location to make the purchase.

Russo drove to the parking lot of a nearby pharmacy where defendant was waiting in his car. Russo had informed defendant that he was making the buy for a high school friend. Russo testified that he entered defendant's car but that when defendant saw that Russo

was not alone, defendant became angry and left the area. Russo returned to the Big Boy restaurant, where he paged defendant and arranged to meet him at another location without the informant. Russo drove to that location, pulled up next to defendant, entered his car, and gave defendant the money in exchange for cocaine. Russo then returned to the Big Boy parking lot where Wilkans and the informant were waiting. He handed the narcotics to Wilkans through Wilkans' driver's side window, and then drove away in his own car. Russo was never informed that Wilkans was a police officer or that the informant was working with police.

A second purchase occurred on May 18, 1991, in much the same manner as the first. Russo drove to the Big Boy parking lot where Wilkans and the informant were waiting in Wilkans' car. Wilkans handed Russo the purchase money, and Russo drove to the parking lot of a nearby restaurant and waited for defendant. When defendant arrived, Russo got into his car and the two exchanged the money for the cocaine. Russo then returned to Big Boy, where he handed the cocaine to Wilkans through the window of Wilkans' car.

The third purchase, giving rise to the charges at issue, occurred on June 25, 1991. This time, Wilkans told Russo that he wanted to purchase one half of a kilogram of cocaine. Russo contacted defendant, who initially expressed reluctance about the deal; however, defendant then stated that the price would be $16,500 and that he wanted to do the entire exchange in one meeting. When Russo met Wilkans at Big Boy to obtain the cash, Wilkans refused to give him the entire $16,500 at once. Instead, Wilkans stated that he would give Russo $4,000 in exchange for a commensurate amount of cocaine, and if the cocaine proved satisfactory, he would tender the balance later. Russo called defendant to explain the new terms, and defendant replied that he would need more time to prepare. Russo left Big Boy and drove around for awhile, eventually calling defendant again from a pay telephone and agreeing to meet him at a defunct International House of Pancakes restaurant.

Russo obtained the payment from Wilkans and proceeded to the restaurant. He waited in the parking lot for 30 minutes and then spotted defendant on a nearby public telephone and picked him up. Russo and defendant drove around the area and Russo gave defendant the purchase money. They then entered defendant's car and drove around the block, and defendant told Russo that the cocaine was under the passenger's seat wrapped in a paper towel. Defendant advised Russo not to touch the bag itself because he would leave fingerprints. After Russo retrieved the package, defendant dropped him off at his car and Russo drove away with the cocaine. Shortly

thereafter, Russo noticed two police cars following him. He increased speed and attempted to discard the cocaine by throwing it over the roof of his car; however, police succeeded in blocking him, and then placed him under arrest. Russo testified that at the station, police showed him the bag that he had been carrying, which he recognized as having a yellow stripe on the top.

On cross-examination, Russo testified that he had been an occasional cocaine user and was in a drug rehabilitation program several years prior to trial. Russo received no payment for the transactions in behalf of Wilkans but instead took a small portion of the cocaine for his own use. Russo admitted there was a criminal case pending against him resulting from the transactions at issue.

Officer Tim Swanson conducted surveillance of the May 15, May 18, and June 25, 1991, transactions. Swanson corroborated the details of the three transactions as described by Russo, including the routes taken by Russo to go from Wilkans to defendant. On May 15, Swanson witnessed the informant, Wilkans, and Russo at Big Boy, and then followed Russo and the informant as they drove to the pharmacy. Swanson testified that at the pharmacy, Russo got out of his car and briefly met a man Swanson identified as defendant. Russo then left, but later met defendant again, without the informant. Swanson testified that he observed the May 15 and May 18 transactions through binoculars and was able to discern arm movements between Russo and defendant.

Sergeant Chris Noel also participated in surveillance of the June 25, 1991, transaction and substantially corroborated Russo's testimony as to the details and routes taken. Noel testified that he and other surveillance officers kept Russo's automobile under constant observation from the time he arrived to meet Wilkans until the time he completed the purchase from defendant. Noel indicated that at one point he got within five feet of Russo's car and was able to identify his passenger as defendant. After Russo left defendant, Noel followed him until he was eventually arrested. Noel watched as Russo threw a white package over his car and testified that the package was later shown to weigh 112 grams and contain 87% cocaine. Noel testified that he searched both defendant's and Russo's cars, but recovered neither money nor narcotics.

Defendant testified that around the time of the offense, he was attending school and doing detail work on his automobile. Defendant admitted meeting with Russo twice on May 15, 1991, and then again several days later, but contended the meetings concerned detail work defendant was to perform on Russo's car. On June 25, 1991, defendant went for pizza and then telephoned Russo for a ride home. Russo

initially declined, but then defendant offered him money for gasoline and agreed to meet him at a location nearer to Russo from which Russo could then drive defendant to his car. When they arrived at defendant's car, Russo again got inside to examine defendant's detail work.

Following arguments, the jury found defendant guilty of possession of a controlled substance with intent to deliver. Defendant was sentenced to 18 years' imprisonment, and after the denial of his post-trial motion, brought this appeal.

■ Defendant first contends that the evidence was insufficient to sustain his conviction, because police failed to uncover narcotics or money from him and because the State's case was based primarily upon the unreliable testimony of Anthony Russo.

When faced with a challenge to the sufficiency of the evidence, this court examines the evidence in the light most favorable to the prosecution and inquires whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267; *People v. Loferski* (1992), 235 Ill. App. 3d 675, 682, 601 N.E.2d 1135.

Russo testified that he arranged to purchase one half of a kilogram of cocaine on Wilkans' behalf on June 25, 1991. On that day, Russo obtained the payment from Wilkans and then proceeded to a different location where he and defendant had arranged to meet. Russo testified that he and defendant then drove in Russo's car and Russo gave the payment to defendant. They subsequently moved into defendant's vehicle, and at defendant's direction, Russo retrieved the cocaine which was under the passenger's seat wrapped in a paper towel. Unbeknownst to Russo and defendant, the entire process was being monitored by Swanson and Noel, whose testimony matched Russo's as to the details of the maneuver and the routes taken. Noel indicated that at one point, he passed within five feet of Russo's vehicle and was able to clearly identify defendant as the passenger.

After meeting with defendant, Russo drove off in his own car and was immediately pursued by police. During the pursuit, Noel watched Russo throw a white bag over the top of his car. Police soon stopped and apprehended defendant and then retrieved the bag, which was later determined to contain cocaine. Viewed in the light most favorable to the State, this evidence was sufficient to sustain defendant's conviction.

Defendant points out that a police search of him and his car failed to produce narcotics or cash. He further claims that Russo's testimony was unreliable because he was a narcotics addict and neither he nor his car was searched for cocaine prior to his meeting with defendant.

Assuming, *arguendo*, that Russo was shown to be an addict, which we are not convinced that he was, this would not warrant reversal in this case, because his testimony regarding the transaction was corroborated in detail by officers who maintained close surveillance. (See *People v. Anders* (1992), 228 Ill. App. 3d 456, 464, 592 N.E.2d 652, citing *People v. Perkins* (1962), 26 Ill. 2d 230, 234, 186 N.E.2d 330, and *People v. Huffman* (1988), 177 Ill. App. 3d 713, 723, 532 N.E.2d 556.) Further, the case against defendant is not defeated merely because no money was recovered (*People v. Lopez* (1989), 187 Ill. App. 3d 999, 1005, 543 N.E.2d 997), or because Russo was not searched for narcotics prior to the alleged exchange. The failure to search a government agent prior to a purchase goes only to the weight afforded the agent's testimony, not its admissibility. *People v. Clay* (1963), 27 Ill. 2d 27, 187 N.E.2d 719.

Defendant admits meeting with Russo at the time of all three alleged transactions. After these meetings, Russo either produced cocaine for Wilkans, or on June 25, 1991, was observed attempting to discard it. This case differs from many involving an informant because during his meetings with defendant, Russo was unaware that police were observing them or that he was acting on behalf of an undercover officer; therefore, Russo had no reason to have staged the meetings in order to falsely accuse defendant. We find that Russo's account was clear, consistent, and reliable despite the fact that he was not searched.

■ Defendant next argues that the court erred in permitting evidence of the sales of May 15, 1991, and May 18, 1991, because they served no relevant purpose other than to show his propensity to sell narcotics.

Other crimes evidence is admissible if material for any purpose other than to show propensity to commit crime. (*People v. Richardson* (1988), 123 Ill. 2d 322, 339, 528 N.E.2d 612; *People v. McKibbins* (1983), 96 Ill. 2d 176, 182, 449 N.E.2d 821.) Such evidence may be admitted if it tends to establish the presence of criminal knowledge or intent (*Richardson*, 123 Ill. 2d at 339; *McKibbins*, 96 Ill. 2d at 185-86), or to explain an aspect of the crime charged which would otherwise be implausible. (*People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 485, 485 N.E.2d 1292.) In particular, evidence of the defendant's prior narcotics transactions is admissible to prove his intent, knowledge, or system of distribution. (*People v. Palmer* (1970), 47 Ill. 2d 289, 296, 265 N.E.2d 627; *People v. Sanderson* (1977), 48 Ill. App. 3d 472, 363 N.E.2d 180.) Where other crimes are offered to prove a defendant's criminal intent, they need not possess the same level of similarity to the offense at bar as is required when offered to

prove *modus operandi.* (*People v. Cruz* (1994), 162 Ill. 2d 314, 349, 643 N.E.2d 636.) The decision to admit other crimes evidence is a matter of trial court discretion and will not be disturbed absent abuse of discretion. *People v. Illgen* (1991), 145 Ill. 2d 353, 364, 583 N.E.2d 515.

Defendant asserts that the court should not have admitted the prior transactions, because they involved a far lesser amount of cocaine than the sale in question. Further, neither defendant's identity nor his intention to distribute cocaine was at issue, because he admitted meeting with Russo on June 25, 1991, but maintained it was for a nonculpable purpose.

Although defendant's presence at the time of the alleged transaction was undisputed, his state of mind during that time was the central issue in this case. Other crimes evidence bears not merely upon who committed the crime, but upon whether the crime was committed at all. (*People v. Rucheinski* (1991), 224 Ill. App. 3d 118, 124, 586 N.E.2d 506.) The prior transactions helped establish defendant's possession of the drug, his specific intent to distribute it, and his ongoing business of selling it (*Rucheinski*, 224 Ill. App. 3d at 124), and tended to remove any doubt that his conduct on June 25, 1991, was inadvertent or innocent. (*People v. Cole* (1963), 29 Ill. 2d 501, 504, 194 N.E.2d 269.) Finally, the prior transactions helped explain why defendant would agree to sell $16,500 worth of cocaine, through Russo, to an individual he knew of only as Russo's supposed high school friend. The prior transactions showed how defendant came to trust the alleged friend as "legitimate." (See *Cole*, 29 Ill. 2d at 504.) Thus, they were properly admitted.

■ Defendant next argues that he was deprived of due process because the State disregarded a court order to produce the informant. The record before this court reveals that defendant has waived this issue for review.

Five months prior to trial, defendant apparently moved for disclosure of the informant's identity, although he has failed to include his motion in the record on appeal. The transcript of proceedings indicates that the court granted the requested disclosure, ordering the State to provide the defense with the informant's name and address. There is no dispute that the State timely furnished this information.

At trial, during Swanson's testimony, defense counsel attempted to elicit the informant's name before the jury. The prosecutor objected, and in the ensuing sidebar, the parties disputed solely whether or not the name should be disclosed in trial. There was never a request that the informant be produced. Although defense counsel noted that he had been unable to locate the informant at the

address provided by the State, he never specifically objected to this fact or requested that the State make further efforts to locate him.

The determination of whether or not an informant must be identified or produced in a particular case involves a three-step analysis, as articulated by the court in *People v. Holmes* (1990), 135 Ill. 2d 198, 552 N.E.2d 763. First, the defendant must establish that the informant's testimony would be relevant and material to his case. (*Holmes*, 135 Ill. 2d at 212.) Once that is established, the State must produce the informant or show that it has made a reasonable, good-faith effort to locate the witness. If the State is unsuccessful in locating the witness, the indictment can be dismissed if the defendant proves by clear and convincing evidence that the unavailable informant's testimony would raise a reasonable doubt as to the State's case. (*Holmes*, 135 Ill. 2d at 213-14; *People v. Tsombanidis* (1992), 235 Ill. App. 3d 823, 601 N.E.2d 1124.) The third requirement imposes upon defendant a higher burden than his initial one of proving merely that the testimony would be material. (*Holmes*, 135 Ill. 2d at 214.) As with other alleged errors, discovery errors are waived where a defendant fails to properly object at trial and merely asserts them for the first time in his post-trial motion. *People v. Velez* (1990), 204 Ill. App. 3d 318, 324-25, 562 N.E.2d 247; *People v. Williams* (1980), 91 Ill. App. 3d 631, 633, 414 N.E.2d 1235; see also *People v. Wilder* (1981), 98 Ill. App. 3d 26, 32, 423 N.E.2d 1346.

In this case, defendant apparently demonstrated that the informant's identity was relevant to his case under the first prong of *Holmes*. However, he failed to apprise the court until the middle of trial that the address provided was inaccurate, and then never specifically objected to this fact. Instead, the alleged failure to "produce" the informant was raised for the first time in his post-trial motion. Accordingly, he has waived this issue for review.

Furthermore, we cannot conclude that this issue was one affecting substantial rights or that the evidence was closely balanced so as to invoke the plain error rule. (134 Ill. 2d R. 615(a).) The extent of the informant's role was to notify Wilkans that he knew of an individual, namely Russo, who would deliver cocaine. Although the informant was in Wilkans' car when Russo was given the purchase money, there was no evidence that he was present for any of the exchanges between defendant and Russo. We recognize that the informant accompanied Russo to meet defendant for the first sale; however, defendant refused to deal with Russo in the presence of the informant, and there was no indication the informant had any personal contact with defendant at that time. Thus, defendant has failed to show that he would have provided any information of value to the defense.

■ Defendant next argues that the State improperly offered evidence that police decided not to search defendant's home because defendant had access to a phone and most likely would have disposed of any narcotics by the time police arrived.

Initially, defendant has failed to cite a case in support of this argument and therefore has waived it. (134 Ill. 2d R. 341(e)(7); *People v. Carpenter* (1992), 228 Ill. App. 3d 899, 905, 593 N.E.2d 817.) Even in the absence of waiver, however, the argument is devoid of merit.

It is well settled that a party who "opens the door" on a particular subject is barred from objecting to questioning based upon the same subject. (*People v. Griffiths* (1983), 112 Ill. App. 3d 322, 328, 445 N.E.2d 521.) During his cross-examination of Wilkans, defense counsel elicited testimony that although Russo had sworn out a search warrant, police had never executed it. This questioning gave the jury an unfounded impression that police knew there were no drugs to be found at defendant's home. The testimony then elicited by the State was as follows:

"Q. Why wasn't that search warrant executed?

* * *

A. The reason was that the time had taken too long [*sic*] *** and too much time had elapsed since *** [in] my opinion, that [*sic*] the defendant had access to phone calls, and we knew from our investigation subsequent [*sic*] that another person had access to that residence, that it would make no sense to, at such a later date, go into that apartment."

The testimony resulted from a proper effort by the State to refute the innuendo created during cross-examination, and explain why it would no longer be expedient to conduct a search. There was no error.

■ Defendant also argues that certain remarks by the prosecutor in closing arguments were improper. However, they were permissible commentary based upon the above testimony by Wilkans and were not improper. *People v. Bryant* (1983), 94 Ill. 2d 514, 447 N.E.2d 301.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

THEIS and S. O'BRIEN, JJ., concur.