# Illinois Official Reports

## Appellate Court

---

### *People v. Thomas*, 2019 IL App (2d) 160767

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEFFREY L. THOMAS, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-16-0767 |
| Filed | March 25, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 15-CF-2013; the Hon. Liam C. Brennan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd and Thomas A. Lilien, of State Appellate Defender's Office, of Elgin, and Richard Dvorak, of Dvorak Law Offices, LLC, of Willowbrook, for appellant.<br><br>Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and Steven J. Lupa, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE ZENOFF delivered the judgment of the court, with opinion.<br>Justices Burke and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Jeffrey L. Thomas, appeals his convictions of delivery of a controlled substance (720 ILCS 570/401(c)(2) (West 2016)) and possession of a controlled substance with intent to deliver (*id.* § 401(d)(i)). Defendant contends that the trial court plainly erred in proceeding to a bench trial when he orally waived a jury trial but refused to sign a written waiver and that the State failed to prove him guilty beyond a reasonable doubt of possession with intent to deliver. We affirm.

¶ 2                                        I. BACKGROUND

¶ 3    In October 2015, defendant was charged with delivery of a controlled substance in that he delivered 13.73 grams of cocaine to an undercover officer. Defendant was also charged with possession with intent to deliver because, during the same incident, nine individually wrapped bags of cocaine were found in defendant's sock, one of which contained 0.138 grams of cocaine.

¶ 4    Before trial, on April 28, 2016, defense counsel told the court that he had not specifically discussed a jury waiver with defendant. On May 20, 2016, counsel told the court that defendant had indicated that he wanted a bench trial but that he would decide after the court ruled on certain motions. On May 24, 2016, after the court ruled on the motions, counsel told the court that defendant wanted a bench trial but that he was very reluctant to sign a written waiver. Counsel asked the court to give defendant an oral admonishment.

¶ 5    The court stated that it found defendant's refusal to sign a written waiver concerning and the following colloquy occurred:

"THE COURT: ***

Let me ask you this, Mr. Thomas: Why don't you want to sign it?

THE DEFENDANT: Because I ain't pick no jury, [Y]our Honor.

THE COURT: Because you don't want a jury trial?

THE DEFENDANT: No, I don't want a jury trial.

THE COURT: But the form that you would be asking [*sic*] to sign would be saying exactly that, that you're giving up the right to a jury trial.

THE DEFENDANT: Yes, but I still don't want to sign nothing, because I don't know what type of paper, don't understand what type of paper they're giving me and stuff like that. So I don't want to sign it. I will say orally I'm requesting a bench trial, instead of signing a piece of paper.

THE COURT: Has anyone ever shown you the piece of paper?

THE DEFENDANT: No.

THE COURT: I'm going to pass it, so you can take a look at it, and then we'll recall the case and discuss it. Thank you."

A recess was held, after which the following colloquy occurred:

"THE COURT: All right. Mr. Thomas, did you have a chance to look at that form that we were talking about?

THE DEFENDANT: Yes.

THE COURT: And do you still have concerns about signing it?

THE DEFENDANT: Yes.

THE COURT: I need you to—well, I'm going to go in a slightly different order. Let me, first of all, do this: [defense counsel] has informed me, and you have seen him say it, that you wish to wave [*sic*] or give up your right to a jury trial and have a trial in front of a judge, or in this case me.

Is that correct?

THE DEFENDANT: Yes.

THE COURT: Let me talk to you about what a jury is. A jury trial is a trial where 12 members from the community are selected with the assistance of [defense counsel]. They would have the [*sic*] listen to the evidence, and they would have to, unanimously, all 12 of them agree, that you're guilty beyond a reasonable doubt before a finding of guilty could enter.

Do you understand that that is what a jury trial is?

THE DEFENDANT: Yes.

THE COURT: Do you understand that—now, let me tell you that—let me talk about what a trial is. A trial is where 12 members from the community—strike that.

A trial is where the State calls witnesses. You can question those witnesses. You could call your own witnesses or testify on your own behalf if you chose, but you wouldn't have to. And that is the evidence that this jury, these 12 people, will hear and base their decision on.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if you give up that right to a jury, instead it's the Court, or in this case me, who hears the evidence and decides whether there's enough evidence to prove you guilty beyond a reasonable doubt[?]

THE DEFENDANT: Yes.

THE COURT: And is that what you wish to do, give up the right to 12 citizens and instead have the Court decide?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about giving up that right?

THE DEFENDANT: No.

THE COURT: So may I see the jury waiver form? On this jury waiver form, it says that you have been advised of your right to a trial by jury, and that you want to waive or give up that right to a jury.

Is that what you want to do?

THE DEFENDANT: Yes.

THE COURT: And you seem intelligent, and you seem to understand what I'm saying. So I'm still—I'm a little confused. I don't want to coerce you or force you, but I want to make sure for the record. Can you tell me again why it is you do not want to sign the paper that says what you're saying orally?

THE DEFENDANT: Because, [Y]our Honor, my name got up on the statement. And I don't even know how my name got up on the statement when I ain't sign no statement. So I'm not going to sign no jury waiver, and I ain't signing no statement.

- 3 -

THE COURT: So your concern is, you don't want to give your signature to them, because you say you never gave it to them in the first place?

THE DEFENDANT: Yes.

THE COURT: So your—I don't know anything about the case or the evidence. But your concern is based upon the evidence of something you say didn't happen?

THE DEFENDANT: Yes.

THE COURT: Well, as I've indicated, I think that this signing of a jury waiver is a safeguard, it's not required under the law. And I believe that the Defendant has been admonished and he does understand. So at this point I will accept the Defendant's waiver of the trial by jury, and I think his explanation for why he didn't want to sign the waiver is spread of record, and the Court is satisfied."

On June 7, 2016, a bench trial was held. The court did not further admonish defendant about his jury waiver, and defendant never executed a written waiver.

¶ 6 Evidence at trial showed that, in August 2015, Special Agent Wojtek Kowal received information that defendant was a suspected cocaine dealer. Kowal communicated with defendant by telephone on several occasions over a few weeks. On September 3, 2015, defendant delivered multiple plastic bags of cocaine to Kowal.

¶ 7 On October 5, 2015, Kowal sent defendant a text message advising that he would be coming back later that weekend. On October 6, 2015, Kowal asked defendant about meeting on a Thursday, and defendant asked Kowal what he was looking for. Kowal replied that he wanted to "pick up more" and inquired whether defendant could handle that. Kowal added that he had "approximately 15 to 16 to play with," which meant $1500 or $1600. Defendant asked Kowal if he "was the police" and said that he was checking for his own safety. Kowal denied being a police officer. Kowal spoke to defendant again on October 7, 2015, and they arranged to meet the next day.

¶ 8 On October 8, 2015, Kowal called defendant, reminded him that he had $1500 to $1600 to spend, and asked if they could meet that evening. Defendant told Kowal that he could supply 60 small bags of cocaine for each $500 that Kowal spent. They later agreed that defendant would supply 200 bags for $1600. Kowal met defendant at a gas station while other officers monitored the conversation. When Kowal arrived, defendant exited the gas station carrying a popcorn bag. Defendant gave the bag to Kowal, who found a substance in it that later tested positive for 13.73 grams of cocaine. Defendant was arrested, and a search recovered a cell phone and nine knotted bags hidden in defendant's sock. One of the bags tested positive for 0.138 grams of cocaine.

¶ 9 Special Agent Greg Pirtle interviewed defendant at the police station. Defendant admitted that he traveled to Du Page County three times in 2015 to sell cocaine. He said that he had one customer in Du Page County and six total.

¶ 10 The State also introduced evidence about defendant's sale of cocaine to Kowal on September 3, 2015, as other-crimes evidence to prove his intent to deliver the cocaine that was found in his sock. Kowal testified that, on September 3, 2015, he met defendant at the same gas station. Defendant approached Kowal's vehicle carrying a grocery bag and a cell phone. Defendant got into Kowal's vehicle, leaned forward, and appeared to remove something from either his sock or his shoe. He then handed Kowal two plastic bags that later

tested positive for cocaine. Kowal gave defendant $200, and defendant told Kowal to call him anytime if Kowal needed more.

¶ 11 The trial court found defendant guilty on both counts. In regard to defendant's intent to deliver the cocaine found in his sock, the court found the other-crimes evidence significant. The court found that, while Kowal was not sure whether defendant had the cocaine in his sock or in his shoe on September 3, 2015, it was clearly in the same area as was the cocaine on October 8, 2015. The court also remarked that it did not think that people who use cocaine typically store it in their socks. The court further found that, even if cocaine might be stored in a sock for personal use, the packaging here, being similar to the packaging on September 3, 2015, indicated defendant's intent to deliver.

¶ 12 Defendant's motion for a new trial was denied. Evidence at sentencing showed that defendant had a lengthy criminal history. He was sentenced to concurrent terms of 12 years' incarceration for delivery of a controlled substance and 5 years for possession with intent to deliver. Defendant's motion to reconsider the sentence was denied, and he appeals.

¶ 13 II. ANALYSIS

¶ 14 Defendant first contends that the trial court erred when it held a bench trial after he refused to sign a written jury waiver. Defendant concedes that he forfeited the issue because he failed to object at trial and failed to raise the matter in his motion for a new trial. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, defendant contends that plain error applies. The right to a jury trial is fundamental, and the deprivation of the right in the absence of a proper waiver is plain error. *People v. Bracey*, 213 Ill. 2d 265, 270 (2004). However, the first step in plain-error review is to determine whether error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 15 The right to a jury trial is protected by the United States Constitution (U.S. Const., amends. VI, XIV) and the Illinois Constitution (Ill. Const. 1970, art. I, § 8) and has been codified by the Illinois legislature. Under section 103-6 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/103-6 (West 2016)), a bench trial may be held if the right to a jury trial is "understandingly waived by defendant in open court." In addition, section 115-1 of the Code provides that "[a]ll prosecutions except on a plea of guilty or guilty but mentally ill shall be tried by the court and a jury unless the defendant waives a jury trial in writing." *Id.* § 115-1. However, the failure to file a written jury waiver does not require reversal "so long as the defendant's waiver was made understandingly in accordance with section 103-6 of the Code of Criminal Procedure." *People v. Tooles*, 177 Ill. 2d 462, 468 (1997). "Whether a jury waiver was made understandingly turns on the facts and circumstances of each particular case." *People v. Liekis*, 2012 IL App (2d) 100774, ¶ 30.

¶ 16 The trial court is not required to provide a defendant with any particular admonishment or information regarding the constitutional right to a jury trial, but it has a duty to ensure that any waiver of that right is made expressly and understandingly. *People v. Hernandez*, 409 Ill. App. 3d 294, 297 (2011). "Regardless of whether the defendant executed a written jury waiver, the record must show that the defendant understandingly relinquished the right to a jury trial." *Id.* A defendant typically speaks and acts through his attorney, and a jury waiver is valid when made by defense counsel in the defendant's presence where the defendant gives no indication of any objection to the trial court hearing the case. *People v. Frey*, 103 Ill. 2d 327, 332 (1984). A defendant's criminal history may also reinforce the determination that a

defendant was familiar with the constitutional right to a jury trial and the ramifications of waiving that right. See *Tooles*, 177 Ill. 2d at 471; *People v. West*, 2017 IL App (1st) 143632, ¶ 13. Because the facts are not in dispute, we review the matter *de novo*. *People v. Bannister*, 232 Ill. 2d 52, 66 (2008).

¶ 17    In *Tooles*, our supreme court reviewed the trial records of three defendants, Tyreese Tooles, William Farmer, and Demarco Gray, in order to ascertain whether each defendant had understandingly waived his right to a jury trial. In each trial, the trial court spoke directly to the defendant. Tooles and Gray were asked whether they understood the difference between a bench and jury trial. *Tooles*, 177 Ill. 2d at 469, 472. Tooles was asked whether his desire to waive his right to a jury trial was the product of any promises or threats. *Id.* at 470. Furthermore, Tooles and Farmer were told that their right to a jury trial was a constitutional right. *Id.* at 469-71. Farmer and Gray were told that waiving their right to a jury trial would result in a judge, without a jury, deciding the case. *Id.* at 471-72. The supreme court concluded that all of the defendants had understandingly waived their right to a jury trial. The court also stressed that no set admonition or advice is required before an effective waiver of that right may be made. *Id.* at 469.

¶ 18    Here, the trial court discussed defendant's jury waiver at length in the presence of his attorney, who had also discussed the matter with him. The court specifically described a jury trial and a bench trial to defendant and ascertained that he understood the difference between them. The court also specifically asked defendant if he understood that he was giving up his right to a jury trial, and defendant said that he did. Indeed, defendant specifically said on multiple occasions that he did not want a jury trial.

¶ 19    The admonishments and defendant's waiver were consistent with *Tooles*. Defendant attempts to distinguish *Tooles* by arguing that his refusal to sign a waiver indicated that he did not understand his rights. But defendant explained his refusal to sign the waiver, stating first that it was "because I don't know what type of paper, don't understand what type of paper they're giving me and stuff like that" and later that "my name got up on the statement. And I don't even know how my name got up on the statement when I ain't sign no statement." At the same time, he specifically stated multiple times that he wanted a bench trial and would orally waive his right to a jury. The court then admonished defendant, and he orally agreed, as he had specifically requested, to waive a jury in accordance with the information on the form, which the court essentially read to defendant. Thus, the record as a whole shows that, while defendant might have been confused about how his name appeared on a written form, whether that was the jury waiver or a different document, such as a statement to police, he was not confused about his right to a jury and he understandingly waived that right. Further, defendant's criminal history bolsters the determination that he understood his rights, based on his experience with the criminal justice system.

¶ 20    Defendant argues that the trial court should have admonished him again before the trial started two weeks later. Defendant has not cited any precedent requiring additional admonishments, nor have we found any. In any event, defendant proceeded to a bench trial in the presence of his attorney, without objection. Given the lengthy admonitions he had received and his knowledge of the system as indicated by his criminal history, we conclude that defendant validly waived his right to a jury trial.

¶ 21    Defendant next contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt of possession of a controlled substance with intent to deliver. He argues

that there was insufficient evidence that the cocaine found in his sock was not for his personal use.

¶ 22    Evidence is sufficient to sustain a conviction if, viewing it in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Perez*, 189 Ill. 2d 254, 265-66 (2000). In assessing the sufficiency of the evidence, we do not retry the case. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Rather, we defer to the trial court's assessment of witness credibility, the weight it gave the evidence, and the reasonable inferences it drew from the evidence. *People v. Steidl*, 142 Ill. 2d 204, 226 (1991).

¶ 23    To establish possession of a controlled substance with intent to deliver, the State must prove beyond a reasonable doubt that (1) the defendant knew that the controlled substance was present, (2) the defendant was in immediate possession or control of the drugs, and (3) the defendant intended to deliver the drugs. *People v. Jennings*, 364 Ill. App. 3d 473, 478 (2005).

¶ 24    Direct evidence of intent to deliver is rare, and circumstantial evidence is commonly used to prove intent. *People v. Robinson*, 167 Ill. 2d 397, 408 (1995). There are various factors from which one may infer intent. *Id.* Those include (1) whether the quantity of the controlled substance is too large to be viewed as being for personal consumption; (2) the high degree of purity of the drugs; (3) the possession of weapons; (4) the possession of large amounts of cash; (5) the possession of police scanners, beepers, or cellular telephones; (6) the possession of drug paraphernalia; and (7) the manner in which the drugs were packaged. *Id.* We are not limited to those factors, however, as they are merely examples of the many factors that a court may consider as indicative of intent. *People v. Bush*, 214 Ill. 2d 318, 327 (2005). The issue is resolved on a case-by-case basis, and the fact that evidence in one case is not as strong as that in other cases is not controlling. *People v. Blan*, 392 Ill. App. 3d 453, 457 (2009). Further, other-crimes evidence may establish intent. *People v. LeCour*, 273 Ill. App. 3d 1003, 1008 (1995); see also *People v. Watkins*, 2015 IL App (3d) 120882, ¶ 46 (citing cases). "In particular, evidence of the defendant's prior narcotics transactions is admissible to prove his intent, knowledge, or system of distribution." *LeCour*, 273 Ill. App. 3d at 1008.

¶ 25    The quantity of a controlled substance alone can be sufficient to prove intent to deliver. See *Robinson*, 167 Ill. 2d at 410-11. That is the case, however, only where the amount of the drugs could not reasonably be viewed as being only for personal consumption. *Id.* at 411. As the quantity of the controlled substance decreases, the need for additional circumstantial evidence of intent to deliver increases. *Id.* at 413. The minimum required for the affirmance of a conviction of intent to deliver a small amount of drugs is possession of the controlled substance packaged for sale plus at least one additional factor indicative of delivery, such as a significant amount of cash recovered from the defendant. See *People v. Beverly*, 278 Ill. App. 3d 794, 802 (1996).

¶ 26    Here, defendant was charged based on the amount of cocaine in one of the nine baggies in his sock. Thus, he argues that the amount was consistent with personal use and that there were insufficient other factors present to prove otherwise. However, that defendant possessed nine separate bags indicated that each was for sale. A cellular phone was also found in his sock. Most important, defendant admitted that he previously sold cocaine, and evidence of defendant's previous transaction with Kowal showed that he previously kept cocaine that he packaged for sale in a similar manner in the area of his shoe or sock. That evidence was

admissible to show intent. Thus, there were additional factors present other than the possession of a small amount of drugs packaged for sale. Accordingly, there was sufficient evidence to prove that defendant possessed the cocaine with the intent to deliver it.

¶ 27                                    III. CONCLUSION

¶ 28         Defendant validly waived his right to a jury trial and was proved guilty beyond a reasonable doubt of possession of a controlled substance with intent to deliver. Accordingly, the judgment of the circuit court of Du Page County is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2016); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 29         Affirmed.