# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Young*, 2013 IL App (2d) 120167

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NICOLE L. YOUNG, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-0167 |
| Filed | September 24, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Although the trial court erred in failing to properly instruct the jury on the limitations applicable to the use of other-crimes evidence and the prosecutor improperly bolstered the credibility of the police officers who testified during closing arguments, those errors did not amount to plain error that would require reversal of defendant's conviction for unlawful possession of cocaine. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 10-CF-2414; the Hon. Patricia P. Golden, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Thomas A. Lilien and Jack Hildebrand, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Matthew J. Schmidt, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Hudson and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant, Nicole L. Young, appeals her conviction of unlawful possession of less than 15 grams of cocaine (720 ILCS 570/402(c) (West 2010)). She contends that it was plain error when (1) the court allowed the jury to hear evidence of other crimes involving possession of drugs and then gave a limiting instruction that the evidence could be considered as to her knowledge and "possession," and (2) the State improperly bolstered the credibility of the testifying police officers during closing arguments. We determine that both were error, but not plain error. Accordingly, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3     Defendant was charged in connection with events that occurred on September 24, 2010, in which she was seen parking her vehicle outside of a house, her passenger entered the house for approximately three minutes, and cocaine was later found in the glove compartment of her vehicle. Before trial, defendant moved *in limine* to exclude statements she made to police officers about her previous drug use and about drug purchases she had previously made from the resident of the house. The State noted that the matter was one of constructive possession and argued that the evidence could be used to show knowledge. The court held that it would allow the evidence and would give a limiting instruction that it could be considered only on the issues of knowledge and possession. The court specifically asked if defendant wanted an instruction derived from Illinois Pattern Jury Instructions, Criminal, No. 3.14 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 3.14) that informed the jury that the evidence was received on only the issues of defendant's knowledge and possession. Defendant's counsel stated "that's correct." A jury trial was then held.

¶ 4     Elgin police detective James Bisceglie testified about his qualifications and that he had previously participated in about 400 investigations and over 300 or 350 arrests, including work with federal agencies. On September 24, 2010, he and his partner, Beth Sterricker, were

in an unmarked surveillance vehicle. Bisceglie saw defendant park in front of a house on Fourth Street and saw a man, later identified as Michael Mallory, in the passenger seat. Mallory got out of the vehicle and entered the house. About three minutes later, Mallory returned to the vehicle. Bisceglie believed that narcotics activity had taken place and he contacted Elgin police officer Bernie Bajak to assist in stopping the vehicle.

¶ 5 Bajak stopped the vehicle when defendant pulled into a gas station. Bajak testified that Mallory was standing outside of the vehicle with the door open and that there were stacks of money on the passenger seat. The glove compartment was open, and Mallory shut it, but he put the money in his pockets. Mallory then struggled with Bajak for a moment, while defendant remained in the driver's seat.

¶ 6 Bisceglie arrived a few minutes later, searched Mallory, and found $300 and marijuana in his pockets. Bisceglie then talked to defendant, who, when asked, said that she did not have anything illegal in the vehicle. Defendant gave permission to search and, in the glove compartment, Bisceglie found a cocaine pipe and six small packets of cocaine, which later were tested and found to weigh 1.3 grams. In the center console, he found a rose tube with a dark smudge on it and a piece of steel wool inside. Bisceglie testified that this would be used for smoking cocaine.

¶ 7 The State called Sterricker to testify about statements defendant made to the police. Before she testified, the State reminded the court that she would provide the statements that were previously objected to. The court then said "[s]o I would read this before," and defense counsel said "[y]es." The court then told the jury:

"I have an instruction to read before this witness. It is a cautionary instruction. And it is that evidence may be received that the defendant has been involved in conduct other than that charged in the indictment.

This evidence will be received on the issue of the defendant's knowledge and possession and may be considered by you only for those limited purposes. It is for you to determine whether the defendant was involved in that conduct, and if so, what weight should be given to this evidence on the issues of knowledge and possession."

¶ 8 Sterricker testified that, after defendant was arrested and taken to the police station, she told officers that she knew the man who lived in the house where the drugs were purchased. Defendant said that the man's name was Vance and that she had purchased marijuana from him in the past. Defendant said that she had recently moved back to Illinois from Florida, had begun purchasing both marijuana and cocaine from Vance, and had done so within three days of the arrest. She also smoked marijuana and cocaine during that period. Defendant said that she and Mallory went to Vance's house on September 24 to purchase marijuana, but she did not know about the cocaine. The interview was not recorded, and Sterricker did not write a report. Bisceglie wrote a report that purportedly included statements from defendant, but Sterricker stated on cross, without additional explanation, that she did not trust that what he put in his report was accurate.

¶ 9 Defendant testified and denied knowledge of the cocaine. She testified that Mallory was her boyfriend, that he had previously used cocaine and heroin, but that, until the arrest, she thought he was clean. She said that she allowed Mallory to use her vehicle three to four times

per week when she was not with him and that he had used it within a week of the arrest. On September 24, 2010, she picked up her salary of $330 in cash, and she and Mallory went to buy $25 worth of marijuana from Vance. She and Mallory did not discuss purchasing cocaine. She did not see Mallory open the glove compartment and to her knowledge there was no cocaine or drug paraphernalia in her vehicle. When she pulled into the gas station, she asked Mallory to fill up the vehicle and gave her money to him. When Bajak pulled up, she saw the glove compartment open and saw Mallory shut it, but she did not see him put anything inside of it. Defendant said that she allowed the officers to search her vehicle because she did not believe that there was any contraband inside of it and she assumed that Mallory put the marijuana in his pocket. However, defendant also said that she told the officers that they would find some marijuana.

¶ 10 Defendant said that she told the police that she tried cocaine when she was 16 and that she recently bought and smoked marijuana. She told the police that she thought Mallory bought the cocaine from Vance because Mallory had recently moved to the area and Vance was the only person he knew. Sterricker was then called as a rebuttal witness and she reaffirmed that defendant said that she had previously bought both marijuana and cocaine from Vance.

¶ 11 During closing arguments, with regard to the evidence of other conduct, the State discussed constructive possession and circumstantial evidence, recited the limiting instruction, and told the jury:

"Now what does that mean? That means that you can take the evidence and the testimony by Detective Beth Sterricker that the Defendant was–when she was interviewed, drove and knew why she was driving to her drug supplier's house, the evidence that she has smoked both cocaine and marijuana in the past three days, the fact that she has bought cocaine and marijuana from him before, that goes to the knowledge and possession. That goes to why the Defendant knowingly possessed the cocaine."

¶ 12 The State then stressed that defendant was guilty of unlawful possession of cocaine because she and Mallory both possessed it. The State later repeated the idea that defendant must have known that the drugs were in the vehicle, because of the things that had happened in the past.

¶ 13 The State also referenced Bisceglie's experience and then said:

"[A]ll of that goes to why Detective Bisceglie and Detective Sterricker do what they did. They've been trained on this. Two to three minutes at the house, out-of-state plates that made them suspicious. They're pretty good at what they do. They found drugs in the car. They knew exactly what happened."

¶ 14 In response to an argument that the officers lied, the State argued:

"The best thing I can say about that, if an Officer is going to get on the stand and take an oath, and they're going to lie, why not make it a good one? Why not get up there on the stand–they're going to risk perjury, risk their career, risk everything to put her away for whatever–why don't they just sit there and say, 'Hey, we found the drugs on her.' "

¶ 15 There were no objections to the State's comments in closing. Without objection, the trial court gave the jury the limiting instruction again before deliberations. The court also

instructed the jury on the definition of constructive possession and instructed that closing arguments are not evidence. The jury found defendant guilty, and she moved for a new trial, arguing that the court erred in allowing evidence of her prior drug use and purchases. She did not argue that the limiting instruction was improper. The motion was denied, and defendant appeals.

¶ 16                                            II. ANALYSIS
¶ 17                                    A. Other-Crimes Instruction

¶ 18    Defendant concedes that she did not object to the jury instruction, but contends that it was plain error for the court to instruct the jury that the evidence of other crimes could be considered on the issues of knowledge and possession. She argues that the use of the term "possession" was the same as instructing the jury that it could use the evidence to establish her propensity to commit the crime of unlawful possession of cocaine.

¶ 19    Both an objection at trial and raising the issue in a posttrial motion are necessary to preserve the issue for appellate review. See *People v. Herron*, 215 Ill. 2d 167, 175 (2005). However, "[u]nder the plain-error doctrine, this court will review forfeited challenges when: (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant; or (2) a clear or obvious error occurred, and the error is so serious that it affected the fairness of the defendant's trial and the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Taylor*, 2011 IL 110067, ¶ 30.

¶ 20    "[U]nder Illinois Supreme Court Rule 451(c) (eff. July 1, 2006), where a jury instruction suffers from a substantial defect, claims of error are not subject to forfeiture on appeal." *People v. Johnson*, 2013 IL App (2d) 110535, ¶ 76. "An erroneous instruction constitutes a substantial defect, or plain error, when the instruction created a serious risk that the defendant was incorrectly convicted because the jury did not understand the applicable law, so as to threaten the fundamental fairness of the defendant's trial." *Id*. Also, " '[w]hen there is error in a close case, we choose to err on the side of fairness, so as not to convict an innocent person.' " *Id.* (quoting *Herron*, 215 Ill. 2d at 193). Thus, in this context, "[p]lain error arises in two circumstances: (1) when the flawed instruction was provided in a case where the evidence was closely balanced or (2) when the flaw in the instruction is 'grave' or so serious that it denied the defendant a substantial right and undermined the integrity of the judicial process." *Id.* (citing *Herron*, 215 Ill. 2d at 178-79).

¶ 21    The defendant has the burden of persuasion under both prongs of the plain-error analysis. *People v. Lewis*, 234 Ill. 2d 32, 43 (2009). Before determining whether plain error occurred, however, we first determine whether error occurred at all. *Id.* If error did occur, we then consider whether either prong of the plain-error doctrine has been satisfied. *People v. Sargent*, 239 Ill. 2d 166, 189-90 (2010).

¶ 22    "Other-crimes evidence encompasses misconduct or criminal acts that occurred either before or after the alleged criminal conduct for which the defendant is standing trial." *Johnson*, 2013 IL App (2d) 110535, ¶ 61. "Other-crimes evidence is admissible to prove any material fact relevant to the case [citation], but is inadmissible if it is relevant only to

demonstrate the defendant's propensity to engage in criminal activity [citation]." *Id.* "Such evidence may be admissible when it is relevant to show, among other things, motive, intent, identity, absence of mistake or accident, *modus operandi*, or the existence of a common plan or design." *Id.* "However, relevant other-crimes evidence may yet be excluded if its prejudicial effect substantially outweighs its probative value." *Id.*

¶ 23 Here, defendant does not dispute that the evidence was admissible to show knowledge and intent. Instead, she takes issue with the limiting instruction, which said that the evidence could show "possession" when possession was the crime charged.

¶ 24 "Jury instructions give the jurors the correct principles of law applicable to the facts so they can reach a correct conclusion according to the law and the evidence." *Id.* ¶ 68. "In a criminal case, the applicable Illinois Pattern Jury Instruction 'shall be used, unless the court determines that it does not accurately state the law.' " *Id.* (quoting Ill. S. Ct. R. 451(a) (eff. July 1, 2006)). "In determining the adequacy of instructions, a reviewing court will consider all the instructions as a whole to ascertain if they fully and fairly cover the law." *Id.*

¶ 25 IPI Criminal 4th No. 3.14 provides as follows:

"[1] Evidence has been received that the defendant[s] [(has) (have)] been involved in [(an offense) (offenses) (conduct)] other than [(that) (those)] charged in the [(indictment) (information) (complaint)].

[2] This evidence has been received on the issue[s] of the [(defendant's) (defendants')] [(identification) (presence) (intent) (motive) (design) (knowledge) (____)] and may be considered by you only for that limited purpose.

[3] It is for you to determine [whether the defendant[s] [(was) (were)] involved in [(that) (those)] [(offense) (offenses) (conduct)] and, if so,] what weight should be given to this evidence on the issue[s] of ____."

¶ 26 There does not appear to be any Illinois authority addressing the use of "possession" in the limiting instruction. However, we have addressed an instruction that mistakenly allowed a jury to consider evidence for purposes of showing propensity.

¶ 27 In *Johnson*, we held that the use of a defective jury instruction regarding other-crimes evidence was plain error. *Johnson*, 2013 IL App (2d) 110535, ¶ 76. There, the defendant was charged with two counts of unlawful possession of a weapon by a felon, which alleged that he knowingly possessed a firearm and ammunition. He was also charged with domestic battery. We determined that evidence of previous threats was admissible to show intent and lack of mistake with regard to the battery charge. By statute, some of the evidence could also arguably have been admissible to show propensity as to the battery charge. However, the trial court did not narrowly tailor the limiting instruction to those purposes and instead listed " 'intent, motive, design, knowledge, absence of mistake, and propensity.' " *Id.* ¶ 35. We determined that this was error, since the jury was wrongly instructed that it could consider the evidence for propensity even as to the weapons charges. We then determined that it was plain error because, regardless of the closeness of the evidence, the error was so grave that it denied the defendant a fair trial and undermined the integrity of the judicial process. *Id.* ¶ 76.

¶ 28 Here, it was error not to specifically tailor the instruction to the reasons the evidence was

properly admitted. Given that defendant was charged with "possession," and that the instruction told the jury that it could use the evidence to determine "possession," the instruction implied that the evidence could show propensity. Thus, we determine that the failure to tailor the instruction to explain the proper use of the evidence was error. The next question, however, is whether it amounted to plain error.

¶ 29    Defendant first argues that the case depended on the credibility of the witnesses, making the evidence closely balanced. We disagree.

¶ 30    "To sustain a charge of possession of a controlled substance, the State must prove the defendant had knowledge of the presence of an illicit substance and that the substance was in his immediate and exclusive control." *People v. Carodine*, 374 Ill. App. 3d 16, 24-25 (2007). The elements of possession can be proved by circumstantial evidence. See *People v. Chavez*, 327 Ill. App. 3d 18, 25 (2001). "[K]nowledge may be established by evidence of acts, declarations or conduct of the defendant from which it may be inferred that the defendant knew of the existence of the narcotics." *Id.* at 24. " '[T]he mere presence of illegal drugs on premises which are under the control of the defendant gives rise to an inference of knowledge and possession sufficient to sustain a conviction absent other factors which might create a reasonable doubt as to the defendant's guilt.' " *Id.* at 26 (quoting *People v. Smith*, 191 Ill. 2d 408, 413 (2000)). Undisputed control of a vehicle gives rise to an inference of the defendant's knowledge of the presence of contraband inside of that vehicle. See *id.* Furthermore, possession may be joint. See *People v. Ingram*, 389 Ill. App. 3d 897, 901 (2009). Mere access by others does not defeat a finding of constructive possession. *People v. Bui*, 381 Ill. App. 3d 397, 424 (2008).

¶ 31    Here, the case was not closely balanced. The State presented evidence that the cocaine was found inside of defendant's vehicle after she was seen parked briefly outside of a house, and she admitted that she knew that Mallory had purchased drugs inside. She further admitted that she had previously purchased both cocaine and marijuana from the occupant of the house and that she had used cocaine and marijuana within the past week. When the vehicle was stopped, defendant saw the glove compartment open and saw Mallory shut it. The cocaine was found in the glove compartment, and used paraphernalia for smoking cocaine was also found in the vehicle. Meanwhile, defendant's evidence was merely her self-serving testimony that she had not admitted buying cocaine from Vance and that she thought that Mallory had purchased only marijuana. Given defendant's undisputed control of the vehicle and the other circumstantial evidence, the case was not close.

¶ 32    As to the second prong, its purpose is to guard against errors that erode the integrity of the judicial process and undermine the fairness of the defendant's trial. *Sargent*, 239 Ill. 2d at 190-91. "Unlike the first prong, prejudice need not be established. Rather, because of the importance of the right involved, prejudice is presumed." *Id.* at 191. "The erroneous omission of a jury instruction rises to the level of plain error only when the omission creates a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial." *Id.* "This standard is a difficult one to meet." *Id.* For example, "it is not necessarily plain error to omit the definition of a term used to instruct the jury on the essential issue in the case." *Id.* "Even an incorrect instruction on an element of the offense is not necessarily reversible error." *Id.*

¶ 33    Here, while the instruction had the potential to be confusing, the error was not as grave as it was in *Johnson*, where the jurors were specifically told that they could use the evidence to find the defendant guilty based on propensity. Standing alone, the instruction here certainly presented a problem, and we caution the State and the trial court to be more careful when presenting limiting instructions in the future. However, the instruction was not given in a vacuum. At trial, defendant denied knowledge of the cocaine. The jury was presented with the definition of constructive possession, and the State noted the limiting instruction and argued how the other-crimes evidence could show defendant's knowledge and thus her constructive possession. Therefore, the danger was greatly lessened that the jury mistakenly thought that it could use the evidence for propensity. Accordingly, in the context of the entire case, we cannot say that the error created a serious risk that the jurors incorrectly convicted defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial.

¶ 34                                    B. Closing Arguments

¶ 35    Defendant next argues that it was plain error for the court to allow the State to bolster the testimony of the officers during closing arguments by referring to their credentials and the risks they would face by lying.

¶ 36    "During closing arguments, a 'prosecutor may comment on the evidence and any fair, reasonable inferences it yields.' " *People v. Sykes*, 2012 IL App (4th) 111110, ¶ 45 (quoting *People v. Nicholas*, 218 Ill. 2d 104, 121 (2005)). "A court will reverse a judgment because of improper closing arguments only if the defendant identifies remarks made by the prosecutor that were (1) improper and (2) so prejudicial that real justice was denied or the jury may have reached its verdict because of the error." *Id.*

¶ 37    "The prosecutor may comment on a witness's credibility only if the remarks are fair inferences from the evidence." *People v. Barraza*, 303 Ill. App. 3d 794, 797 (1999). To determine whether a prosecutor's comment is proper, courts must view it in context of the entire closing argument. *Sykes*, 2012 IL App (4th) 111110, ¶ 47. "Challenging a witness's credibility may invite a prosecutor to respond, but it does not give the prosecutor *carte blanche* to make up evidence during closing argument." *Id.*; see *People v. Rivera*, 277 Ill. App. 3d 811, 820-21 (1996) (reversible error occurred when the prosecutor, in response to defense counsel attacking the credibility of a State witness, argued that the witness was putting his life at risk by testifying because the defendant was a known gang member, when no evidence was presented that the witness feared for his life).

¶ 38    In *People v. Adams*, 2012 IL 111168, ¶¶ 20-23, our supreme court held that it was improper for the State to comment to the jury that police officers should be believed because they would not risk their jobs by lying on the witness stand, but that the comments did not amount to plain error. There, the defendant was indicted for unlawful possession of a controlled substance. During closing argument, the State commented to the jury that, if it believed the defendant's case, it would have to believe that the two police officers involved were risking their credibility, their jobs, and their freedom over 0.8 grams of cocaine. The State repeated the concept during rebuttal and also commented that one of the officers was

an 8½ -year veteran of the sheriff's department and that the other was a 5-year veteran of the forest preserve police. The defendant appealed his conviction, arguing in part that the State's comments constituted plain error and required reversal of his conviction because they were so prejudicial. The appellate court agreed and reversed. *People v. Adams*, 403 Ill. App. 3d 995, 1008 (2010), *rev'd*, 2012 IL 111168, ¶ 31.

¶ 39    The supreme court agreed that the comments were improper as impermissible speculation, since no evidence was introduced at trial from which it could be inferred that the officers would risk their careers if they testified falsely. The State also implied that the officers were more credible solely because they were police officers, which violated the principle that a prosecutor may not argue that a witness is more credible because of his or her status as a police officer. *Adams*, 2012 IL 111168, ¶ 20. However, while it agreed that the comments were improper, the supreme court disagreed with the appellate court's conclusion that the comments amounted to plain error. The court reviewed the evidence and determined that it was not closely balanced; it also noted that the jurors had been properly instructed that counsels' arguments were not evidence and that they were the judges of the witnesses' credibility. See *id.* ¶¶ 22-23. Therefore, the supreme court concluded that, though improper, the prosecutor's comments were not inflammatory enough to have threatened to tip the scales of justice against the defendant. See *id.* ¶ 23. The supreme court also concluded that the prosecutor's comments did not rise to the level of affecting the fairness of the defendant's trial and the integrity of the judicial process. See *id.* ¶ 24.

¶ 40    Here, the State did not present evidence that a police officer would be at risk of losing his or her job or being charged with perjury if he or she lied on the stand. By emphasizing their credentials, the State also indicated that the police officers were more credible simply because they were police officers. Accordingly, under *Adams*, the State's comments were improper. Thus, the next question is whether the error amounts to plain error.

¶ 41    As to the first prong, defendant argues that the case was closely balanced because it depended upon the credibility of the witnesses. As previously noted, however, defendant's self-serving denial of knowledge was overwhelmed by the State's evidence. Thus, we are unable to determine that the improper comments threatened to alter the outcome of the case.

¶ 42    As to the second prong, defendant argues that the error, compounded with the error regarding the other-crimes evidence, affected the fundamental fairness of her trial. In *Adams*, the supreme court held that the prosecutorial comments, similar to those in this case, did not amount to second-prong plain error. *Id.* However, there is some precedent for finding plain error when multiple errors have occurred in a case. See, *e.g.*, *Johnson*, 2013 IL App (2d) 110535, ¶ 81; *Sykes*, 2012 IL App (4th) 111110, ¶ 56. While the errors in this case trouble us, we ultimately conclude that, even when combined, they do not amount to plain error. When the context of the entire case is considered, we do not believe that the errors became so serious that they affected the fairness of defendant's trial and the integrity of the judicial process.

¶ 43                                III. CONCLUSION

¶ 44    The trial court erred when it failed to properly tailor the limiting instruction on the use

of other-crimes evidence. The State also improperly bolstered the credibility of the testifying police officers during closing arguments. However, the errors do not constitute plain error. Accordingly, the judgment of the circuit court of Kane County is affirmed.

¶ 45        Affirmed.