2022 IL App (2d) 190900-U
No. 2-19-0900
Order filed March 8, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-CF-126 |
| TIYANIA B. POOLE, | ) ) | Honorable Michael E. Coppedge, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices Jorgensen and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The evidence was sufficient to support defendant's convictions of possession of cannabis, cocaine, clonazepam, and alprazolam. However, the evidence was not sufficient to support her conviction of possession of cannabis with intent to deliver. Therefore, we affirm in part and reverse in part.

¶ 2    At issue in this appeal is whether the State presented evidence sufficient to convict

defendant, Tiyania B. Poole, beyond a reasonable doubt of the following five offenses: possession

of cannabis with intent to deliver, possession of cocaine, possession of clonazepam, possession of

alprazolam, and possession of cannabis.  We hold that the evidence was sufficient to convict her

of the four counts of possession but was not sufficient to convict her of possession of cannabis with intent to deliver. Therefore, we affirm in part and reverse in part.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant was charged with 17 counts related to her alleged unlawful possession on February 21, 2019, of various controlled substances. Relevant to this appeal were the following counts: count IV, unlawful possession with intent to deliver cannabis (720 ILCS 550/5(c) (West 2018)); count V, unlawful possession of a controlled substance (cocaine, less than 15 grams) (720 ILCS 570/402(c) (West 2018)); count VI, unlawful possession of a controlled substance (clonazepam) (720 ILCS 570/402(c) (West 2018)); count VII, unlawful possession of a controlled substance (alprazolam) (720 ILCS 570/402(c) (West 2018)); and count IX, unlawful possession of cannabis (between 10 and 30 grams) (720 ILCS 550/4(b) (West 2018)).

¶ 5     Defendant waived her right to a jury trial, and her bench trial commenced on August 12, 2019. The State first called Officer Nicholas Clesceri, who testified as follows. He was employed by the McHenry County Sheriff's Office and assigned to the intelligence gang unit. On February 21, 2019, he was present at an apartment on Northfield Court in Harvard, assisting in the execution of an arrest warrant for defendant's mother, Tinayia Poole.

¶ 6     At the apartment door, the police announced themselves and stated that they had an arrest warrant for Tinayia. Defendant replied that she was not present and refused to open the door. The police eventually used a ram to breach the door, and Clesceri observed defendant inside. She was wearing a t-shirt but no pants. Defendant "continued to scream" and say they were not allowed to come into the house. Inside the apartment, the officers heard a male subject in a bedroom, and they ordered him out. Kenyon Brown-Coenic emerged from the bedroom, and he was wearing only a

blanket. He did not live at the apartment, and Clesceri believed that he and defendant had "some type of dating relationship."

¶ 7    Within the bedroom, Clesceri observed several things in plain view that were indicative of narcotics use, including a blunt wrapper in the trash can and a blunt on an ashtray on top of a dresser. Also on the dresser, he observed several other items: a pill bottle with the label removed and some pills in it, a blue plastic baggy with suspected cannabis in it, and two knotted off pieces of "user baggies." He remained in the bedroom to maintain scene security because he was advised that narcotics detectives were going to apply for a search warrant, which they ultimately secured.

¶ 8    Clesceri assisted with the execution of the search warrant, and he described the bedroom as having a mattress on the floor and clothing everywhere. He found a black hoodie sweatshirt on the floor with a pocket and a gray Carhartt logo. He searched the hoodie and found a grocery bag containing foil, inside of which were a bunch of blue individually packaged plastic baggies with suspected cannabis. Also inside the grocery bag was a film canister filled with individually packaged items suspected to be crack cocaine. The items were placed into evidence bags.

¶ 9    Brown-Coenic initially was allowed to leave, but he remained within the apartment complex. He asked numerous times for clothing he had in the apartment, and Clesceri first found and brought him all his items but the hoodie. After Clesceri found the hoodie and the items therein, Brown-Coenic was arrested.

¶ 10    Tom Nickels was an officer employed by the Woodstock Police Department and assigned to the McHenry County Sheriff's Narcotics Task Force, and he testified as follows. On February 21, 2019, he was working as a detective with the narcotics unit, and he went to the apartment on Northfield Court in Harvard to help execute an arrest warrant. His role was to stay outside the apartment and make sure nobody escaped. The subject of the arrest warrant, Tinayia Poole, was

not at the apartment, and he was informed that she was instead located at a hotel, the Baymont Inn, in Harvard. He and several other officers went to the Baymont Inn and arrested Tinayia.

¶ 11 After the arrest, Nickels returned to the apartment and waited inside while the police obtained a search warrant. He was assigned as the evidence officer for the execution of the search warrant, and his role included taking photographs of the apartment and evidence therein, and to collect and maintain any evidence found.

¶ 12 Within the bedroom located on the left-hand side of the apartment's hallway, Nickels identified a powdery, rock-like substance on the floor. On the TV stand in the bedroom, he found a glass smoking device, which smelt of burnt cannabis. On the cabinet next to the bed, he identified two empty plastic baggies that were knotted off and broken open. Based on his experience, tied-off baggies were commonly used to package narcotics. A third plastic baggy on the cabinet contained cannabis. Also on the cabinet, there was a pill bottle, which contained multiple pills of clonazepam and alprazolam, and a cigar-like smoking device that smelled of burnt cannabis. Based on his experience, cigars were commonly packed with cannabis. On the floor between the cabinet and the bed, he observed a basket containing mail for defendant, and at least one piece of her mail listed the apartment's address. He also observed a black Carhartt hoodie with gray lettering on the floor. Inside the hoodie's pocket was a grocery bag, and it contained pieces of aluminum foil, multiple bags of cannabis similar to the bags located on the cabinet, and a black plastic tube containing multiple individually packaged items of a white, rock-like substance. Nickels photographed all of these items and identified the State's exhibit containing photographs he took that day of the apartment and the items found.

¶ 13 In the evidence packaging room at the sheriff's office, Nickels performed field tests on several baggies found within the hoodie to test whether the contents were cannabis, and the tests

came back positive. The baggies also smelled like cannabis. To the best of his knowledge, the total weight of the cannabis found in the baggies was 15 grams. He did not test the suspected cocaine found in the black plastic tube in the hoodie.

¶ 14    Jason Draftz, an officer employed by the Village of Lake in the Hills Police Department and assigned to the narcotics unit at the McHenry County Sheriff's Office, testified as follows. He participated in the execution of Tinayia's arrest warrant at the Northfield Court apartment on February 21, 2019. After officers entered the apartment, they relayed information to him on probable cause for a search warrant, and he applied for the warrant. Draftz returned to the apartment with the search warrant and gave it to the officers present, and they executed the warrant.

¶ 15    Draftz had also assisted in the June 15, 2016, execution of a search warrant for narcotics at a separate address on South Division Street in Harvard. Defendant had been residing at that address, and officers discovered digital scales, one with a green, plant-like material and another with a white, powder-like material. They also found individually packaged baggies each containing a white, rock-like substance inside of a cereal box located inside a kitchen cabinet. The rock-like substance weighed approximately 2.5 grams, and he concluded that the substance was cocaine. Defendant was arrested for possession of cocaine and possession with intent to deliver cocaine.

¶ 16    Draftz further testified that he made the initial determination to allow Brown-Coenic to leave the scene. He was aware that indicia of drug use had been observed in plain view when he made this determination. Brown-Coenic left the apartment but remained outside, asking for clothing. He asked for several items, including his sweatshirt, which was the Carhartt hoodie. Clesceri informed Draftz that he located narcotics in the hoodie, and Brown-Coenic was subsequently arrested.

¶ 17    Edward McGill was a forensic scientist specializing in drug chemistry for the Illinois State Police at its Rockford lab, and the trial court received him as an expert in forensic toxicology and chemistry. Regarding evidence recovered from the apartment on February 21, 2019, he testified that he weighed and tested nine packaged items of suspected cocaine. The total weight of the substance from the nine items was 1.2 grams, and based on the tests performed, it was his opinion that each of the nine items contained cocaine. He also examined the pills from the bottle recovered from the apartment bedroom, and it was his opinion that the bottle contained pills of alprazolam and clonazepam.

¶ 18    Master Sergeant Jeff File was the deputy director for the Illinois State Police North Central Narcotics Task Force, and the trial court received him as an expert in street-level narcotics transactions. He testified that the packaging of the cocaine identified in this case was significant, and it was his opinion that the cocaine was packaged with intent to deliver. He testified that, in looking at the evidence in this case, he did not see evidence of paraphernalia for use of crack cocaine, although he did see evidence of cannabis use. As to the individual bags of cannabis, he again found their packaging significant. He opined that the cannabis was packaged with intent to deliver. He explained that when people buy cannabis, especially over half an ounce, they do not buy individual bags. Thus, he concluded that the cannabis was packaged with intent to deliver despite indicia of cannabis use in the bedroom. After File's testimony, the State rested.

¶ 19    David Martin testified for the defense as follows. He was 68 years old and currently lived at the apartment on Northfield Court in Harvard. He had lived there since October 2018 as a tenant, and he was the only lessee for the apartment. He had known Tinayia for 14 years, and he described their relationship as friends. They "got together a few times," but their relationship was never a

dating relationship. At the time he moved into the Northfield Court apartment, he was living with Tinayia and her four-year-old grandson.

¶ 20    Defendant first came to live with them at the Northfield Court apartment around December 2018, after she got out of jail. She also stayed with other family members after her release. Prior to February 21, 2019, defendant had been staying at the apartment for about three weeks, and Tinayia had not been staying at the apartment for about one week. He described defendant as being at the apartment on a temporary basis, saying she needed a place to stay until she figured out her next move. The apartment had two bedrooms, and he had the smaller bedroom. The second bedroom was Tinayia's. Defendant would either share Tinayia's bedroom or sleep on the couch in another room. Martin testified that Tinayia smoked cannabis daily to help deal with glaucoma.

¶ 21    Tinayia testified as follows. At the time of trial, she was staying with her mother in Chicago, but she had previously resided with Martin at the Northfield Court apartment. On February 21, 2019, she was arrested at the Baymont Hotel, which was where she worked doing some housekeeping. On that day, defendant was staying at the Northfield Court apartment, and she had been there for "maybe a couple of weeks." The plan for defendant was not to stay indefinitely but instead to get some medication and then move elsewhere. Tinayia believed that Brown-Coenic was defendant's boyfriend, but he was not staying at the apartment. As far as she knew, February 21 was the first day he had come over.

¶ 22    Tinayia testified that she had had prescriptions for clonazepam and alprazolam. She continued that the clonazepam and alprazolam pills that defendant was charged with possessing were not defendant's pills but instead were prescribed to herself. The pills helped her sleep, and she did not really pay attention to the difference between the two types of pills. She could not remember the doctor who prescribed the pills. She believed the prescription was several years old

and the pills might also be several years old. She did not throw things out because she was a hoarder.

¶ 23    Tinayia smoked cannabis in the apartment, and she gave several reasons for doing so: glaucoma, arthritis, depression, and other medical reasons. She smoked approximately two or three times a day. She denied that the cannabis found in the bedroom were hers.

¶ 24    The last defense witness was Brown-Coenic, and he testified as follows. He was currently an inmate at the Illinois Department of Corrections. He had been sentenced to 18 months for possession of a controlled substance after being taken into custody on February 21, 2019, the same day defendant was arrested. After his 18 months, he would be on parole for one year, per his negotiated plea with the State.

¶ 25    Defendant was his "girl, lady friend"—they were in a dating relationship. Defendant did not know he was coming to visit her at the Northfield Court apartment that night, because he was trying to surprise her after not seeing her for a year or so. The night he arrived, he was drunk and high on ecstasy, and he was wearing a black Carhartt hoodie. Once he arrived at the apartment, he took off the hoodie so that he and defendant could have sex. He did not recall whether defendant was dressed when he arrived because he was high. He "wasn't even paying attention. [He] was just focusing on getting it." After they had sex, he went to sleep, and when he woke up the police were present.

¶ 26    He denied giving his hoodie to defendant. The hoodie contained his "belongings," which included a bag with drugs in it. He confirmed that the drug inside the black cylinder was cocaine. On cross-examination, he confirmed that the cocaine was packaged for sale and was his. The cannabis was also his, but the pills found in the bedroom were not his. He never observed defendant touch, hold, or possess his hoodie, and he never relinquished control of his hoodie to defendant.

He denied giving defendant drugs or doing drugs with her that day. He denied that she knew he had drugs in his hoodie.

¶ 27 Following closing arguments, the trial court orally issued its findings, which we summarize in relevant part. As to count IV, possession of cannabis with intent to deliver, the trial court noted that there was an identically packaged baggie of cannabis on the bedroom nightstand, the same type of packaging as for the cannabis in the bag in Brown-Coenic's hoodie. The trial court also found indicia of cannabis use in the room, including a blunt and the contents of the bedroom's garbage can. Accordingly, the trial court found that defendant constructively possessed cannabis between 10 and 30 grams. As to whether she had intent to deliver, the trial court accepted File's testimony that the cannabis, which defendant constructively possessed, was packaged in a manner that showed an intent to deliver. It noted that the hoodie was found in the bedroom, and Brown-Coenic was asleep for at least four hours before the police arrived. It drew the reasonable inference that either defendant extracted the baggie of cannabis from the hoodie because she knew the cannabis was there or she was aware that Brown-Coenic was bringing cannabis with him to the apartment. Therefore, defendant was found guilty on count IV.

¶ 28 As to count V, possession of less than 15 grams of cocaine, the issue turned "squarely on the issue of constructive possession." The trial court cited the white powdery substance found in the bedroom, and it believed that, despite no testimony as to the testing of that substance, it was reasonable to infer that the substance was the same substance found in Brown-Coenic's hoodie. Furthermore, cocaine was confirmed to be in his hoodie along with baggies of cannabis. As to the

weight of the cocaine, it relied on McGill's testimony that the weight of the cocaine was around 10.2 grams.[1] Accordingly, it found defendant guilty on count V.

¶ 29     The trial court next turned to counts VI and VII, for possession of clonazepam and alprazolam, respectively. First, it found no question that these items were found in a pill bottle in plain view, and the issue was whether the pills belonged to defendant or to her mother, Tinayia. After reviewing Tinayia's testimony and the State's argument, it rejected Tinayia's testimony that the pills were hers. The trial court concluded that defendant possessed the pills, which were located in a room that was under her control, and therefore it found her guilty of counts VI and VII.

¶ 30     Lastly, as to count IX for possession of cannabis, the trial court stated that it had already found that defendant was guilty of unlawful possession with intent to deliver. Accordingly, the evidence supported mere possession, and defendant was found guilty on count IX. The trial court noted that count IX was a lesser-included offense of count IV, and stated that at sentencing, count IX would merge and be disposed of by virtue of any sentence imposed on count IV.

¶ 31     Defendant was sentenced to 15 months' imprisonment on counts IV, V, VI, and VII, to run concurrently, as well as fined $75 for each count. The trial court entered a separate misdemeanor sentencing order for count IX, entering a judgment of conviction and ordering that defendant pay a fine of $75. Pursuant to statute, she was subject to one year of mandatory supervised release.

¶ 32                                     II. ANALYSIS

_____

[1] The trial court misspoke, as McGill testified to 1.2 grams. However, the trial court correctly recounted McGill's testimony as to the correct weight of cocaine earlier in its ruling, and both 10.2 and 1.2 grams satisfied the criteria for possession of less than 15 grams of cocaine.

¶ 33    Defendant raises two arguments on appeal: (1) the State failed to prove beyond a reasonable doubt that she was in possession of any controlled substance, and (2) the State failed to prove beyond a reasonable doubt that she possessed cannabis with intent to deliver.

¶ 34    In addressing a challenge to the sufficiency of the evidence, the reviewing court views the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 433 U.S. 307, 317 (1979); *People v. Gray*, 2017 IL 120958, ¶ 35. The reviewing court will not substitute its judgment for the trier of fact on questions involving the weight of the evidence or the credibility of witnesses. *People v. Bradford*, 2016 IL 118674, ¶ 12. A criminal conviction will not be reversed for insufficient evidence unless the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt. *People v. Belknap*, 2014 IL 117094, ¶ 67.

¶ 35                            A. Constructive Possession

¶ 36    Defendant argues that the State failed to prove beyond a reasonable doubt that she was in possession of controlled substances. The State's theory was constructive possession of the four drugs for which she was convicted—the cocaine in Brown-Coenic's hoodie, the cannabis in his hoodie and on the nightstand, and the alprazolam and clonazepam pills on the nightstand—and defendant argues this theory required that she must have known that the drugs were present. She contends that her mere presence in the vicinity of controlled substances was insufficient to establish her constructive possession.

¶ 37    Defendant argues that the trial court's findings were unsupported by evidence: The State did not present any forensic evidence, like fingerprints or DNA samples, that tied her to any of the drugs or their packaging, and it did not provide evidence, such as text messages, to prove she knew

that Brown-Coenic would be bringing drugs over that night. She contends that the trial court instead stacked "inference upon inference" to string together its findings of guilt. She argues that her mere ability to access an area where the contraband was recovered did not prove she necessarily had knowledge that the contraband was in the area.

¶ 38    The State responds that the evidence demonstrated defendant's intent and capability to maintain dominion and control over the controlled substances. The State continues that it proved more than defendant's mere presence in the vicinity of alprazolam and clonazepam, citing to the trial court's credibility determination that it did not believe defendant's mother's testimony that the drugs were hers. Furthermore, it highlights that the two drugs were contained in a single prescription bottle, which had the prescription holder's name excised from the bottle. The alprazolam and clonazepam were found on top of a nightstand, and mail with defendant's name and address was found in a basket next to the bed in the same room.

¶ 39    Turning to the cocaine and cannabis, the State argues that both cocaine and cannabis were found in a grocery bag in a pocket of Brown-Coenic's hoodie. The police found a "powdery rock-like substance on the floor" when they entered defendant's apartment that night. They also found a blunt wrapper in the trash can in the bedroom and a blunt with cannabis smell in an ashtray on the dresser. The State argues that these facts contradicted Brown-Coenic's testimony that he did not do drugs with defendant that night. The State argues that, although Brown-Coenic testified that he never saw defendant touch or possess anything in his hoodie, the evidence of drug use supported the reasonable inference that either Brown-Coenic shared drugs with defendant or defendant helped herself to the drugs when he was asleep. Thus, the evidence inferred that defendant had knowledge of the controlled substances in Brown-Coenic's hoodie and that she had access, control, and dominion over it along with Brown-Coenic.

¶ 40    We hold that the evidence was sufficient to prove defendant's guilt beyond a reasonable doubt on counts V, VI, VII and IX, for possession of cocaine, clonazepam, alprazolam, and cannabis, respectively. In reviewing a conviction for possession of a controlled substance, the deciding question is whether the defendant had knowledge and possession of the drugs. See *People v. Givens*, 237 Ill. 2d 311, 334-35 (2010) (addressing 720 ILCS 570/402 (West 2004)); see also 720 ILCS 550/4 (West 2018) (possession of cannabis). Possession may be actual or constructive. *Givens*, 237 Ill. 2d at 335. A defendant has constructive possession over a substance when they have the intent and capability to maintain control and dominion over that substance. *People v. Dismuke*, 2013 IL App (2d) 120925, ¶ 16. Possession may be joint; mere access by others to the substance does not defeat a finding of constructive possession. *People v. Young*, 2013 IL App (2d) 120167, ¶ 30. Further, the elements of the offense can be proved by circumstantial evidence. *Id.* Although a defendant's mere presence in the vicinity of a controlled substance cannot establish constructive possession (*People v. Alexander*, 2014 IL App (2d) 120810, ¶ 36), the presence of illegal drugs on premises under the control of the defendant gives rise to an inference of knowledge and possession sufficient to sustain a conviction absent other factors that may create reasonable doubt as to the defendant's guilt (*Young*, 2013 IL App (2d) 120167, ¶ 30).

¶ 41    With respect to the clonazepam and alprazolam pills found together in a pill bottle, the State put forth evidence that the pill bottle with those drugs was located in plain view on a piece of furniture next to the bed in defendant's bedroom. In a basket near the bed, officers recovered mail addressed to defendant at the Northfield Court apartment. Furthermore, Martin testified that the apartment had two bedrooms: one was his and one was Tinayia's. He testified that defendant had been staying at the apartment for approximately three weeks prior to February 21, 2019, and that Tinayia had not been staying for about one week prior. When defendant stayed at the

apartment, she either shared Tinayia's bedroom or slept on a couch. Consistent with Martin's testimony, Tinayia testified that defendant had been staying at the apartment for "a couple of weeks" before February 21, 2019. Taken together in the light more favorable to the State, this evidence was sufficient to establish that defendant had control over the bedroom at the apartment where the clonazepam and alprazolam were found.

¶ 42    Having established defendant's control over the bedroom at the time the pills were recovered, we do not find that other facts or circumstances create reasonable doubt as to her guilt for possession of clonazepam and alprazolam. Although Tinayia testified that those pills were hers, the trial court found her testimony on the matter incredible. A reviewing court will not substitute its judgment for that of the trial court regarding the credibility of witnesses, and the trial court's findings are not against the manifest weight of the evidence unless the opposite conclusion is clearly evident or the finding itself is unreasonable, arbitrary, or not based on the evidence. *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). Here, Tinayia could not testify to the doctor who prescribed the pills or to when she got the pills—only that she believed she was prescribed the pills several years earlier. On the one hand, she testified that she did not throw the pills out because she was a hoarder, but on the other hand, she did not save a prescription or receipt. More importantly, the pills were found in a bottle next to the bed in defendant's bedroom where she had been staying for weeks, and the name of the prescription holder was excised from the bottle. Under these facts, the trial court reasonably rejected Tanayia's testimony that the pills were hers, and we conclude that the evidence was sufficient to convict defendant of possession of clonazepam and alprazolam.

¶ 43    Turning to the cannabis and cocaine, both of these drugs were uncovered from within the pockets of the black Carhartt hoodie found on the floor of the bedroom. Several of the same baggies containing cannabis as found in the hoodie were also found on the furniture next to the bed. Two

baggies were empty, and one still contained cannabis. Officers testified to indicia of cannabis use in the bedroom, including a glass smoking device that smelled of burnt cannabis on the TV stand, a cigar-like smoking device that smelled of burnt cannabis on the same furniture as the pill bottle, a blunt wrapper in the trash can, and blunt on an ashtray on top a dresser. Nickels also identified a powdery, rock-like substance on the floor.

¶ 44　As already discussed, the bedroom was under defendant's control, and the evidence of drug use within the bedroom belies defendant's position that she was merely in the vicinity of the drugs in the hoodie without knowledge of them. The evidence supported the inference that cannabis was used in the bedroom that night and that the cannabis came from the stock of cannabis and cocaine located within the same bag in the hoodie. Although Brown-Coenic denied giving drugs to defendant that day or that she knew of his drugs in the hoodie, he also testified that he arrived at the apartment drunk and high on ecstasy, that he took off the hoodie to have sex with defendant, and that after having sex he went to sleep until the police showed up. He went from being solely focused on "getting it" to being asleep, with the reasonable inference being either that defendant retrieved the drugs from his hoodie while he was asleep or that he was actually awake while the drugs from his hoodie were used in the bedroom.

¶ 45　Thus, the evidence supported the reasonable inference that defendant knew about the cannabis and cocaine in the hoodie, which were present in an area under her control. We note that Tinayia's testimony further supported the trial court's findings. Tinayia, who had been staying at the Baymont Hotel on February 21, 2019, denied that the cannabis in the bedroom was hers. She testified that although she smoked cannabis two to three times a day, she did not smoke in the bedroom. Contrary to defendant's argument, the State did not need to provide DNA or fingerprint evidence tying her to the drugs or text messages that she knew Brown-Coenic was bringing drugs

before he arrived. Rather, possession of a controlled substance can be proved by circumstantial evidence (*Young*, 2013 IL App (2d) 120167, ¶ 30), and in this case, the presence of cannabis and cocaine in the same bag in the hoodie along with the indicia of cannabis use in the bedroom gave rise to a sufficient inference of defendant's knowledge to support her conviction for possession of cannabis and cocaine.

¶ 46                                  B. Intent

¶ 47    Defendant also argues that, regardless of whether she possessed cannabis, the evidence did not support that she personally had the intent to deliver cannabis. She argues that the State's case against her relied on Brown-Coenic's testimony of his intent to sell drugs, and she contends that his testimony failed to demonstrate her intent to deliver cannabis but rather supported only his intent to sell drugs.

¶ 48    Defendant continues that the State was required to prove three elements in order to convict her of possession of a controlled substance with intent to deliver: (1) knowledge of the cannabis in the hoodie, (2) immediate possession or control of the cannabis, and (3) intent to deliver the cannabis. She argues that the State failed to present any evidence that she intended to deliver cannabis, including failing to present any combined drug-selling effort between her and Brown-Coenic, despite having access to their phones. She argues that, instead, it sought to bootstrap her intent on the back of Brown-Coenic's intent via their joint constructive possession. In other words, she argues that the State did not prove the third necessary element of the offense.

¶ 49    The State responds that it did prove defendant's intent to deliver cannabis. It argues that, as direct evidence of intent to deliver is rare, intent is usually proven by circumstantial evidence, and the quantity of a controlled substance alone can be sufficient to prove intent to deliver. It

argues that here, the trial court put the greatest weight on the packaging of the cannabis, accepting File's expert testimony on the matter.

¶ 50     We agree with defendant that under the facts of this case, the evidence was not sufficient to prove her intent to deliver cannabis beyond a reasonable doubt. The State was required to prove that defendant knowingly possessed between 10 and 30 grams of cannabis with intent to deliver. 720 ILCS 550/5(c) (West 2018). Intent to deliver is a separate element than possession. See, *e.g.*, *People v. Thomas*, 2019 IL App (2d) 160767, ¶ 23. We have already concluded that the State presented sufficient evidence that defendant constructively possessed between 10 and 30 grams of cannabis, as she constructively possessed the cannabis in a baggie near her bed and within Brown-Coenic's hoodie. In proving intent, the State had to put forth facts beyond those establishing constructive possession.

¶ 51     The State's additional evidence was the testimony of File, who found the packaging of the cannabis significant. The trial court accepted his testimony that the packaging supported an intent to deliver the cannabis. Although the State is correct that the manner in which a substance is packaged is circumstantial evidence probative of intent to deliver (*People v. Starks*, 2019 IL App (2d) 160871, ¶ 37), the issue of intent is resolved on a case-by-case basis (*Thomas*, 2019 IL App (2d) 160767, ¶ 24), and whether evidence of intent was sufficient should be made after careful review of the circumstances surrounding the defendant's arrest (*People v. Little*, 322 Ill. App. 3d 607, 615 (2001)).

¶ 52     Critical to this case was the question of *whose* intent the packaging evidenced. Here, the evidence clearly showed that the majority of the cannabis was in the hoodie and that the hoodie belonged to Brown-Coenic. In its ruling, the trial court even referred to the hoodie as Brown-Coenic's sweatshirt. While some cannabis was found outside of the hoodie, there was indicia of

cannabis use in the bedroom, and two of the three baggies outside of the hoodie were empty. Since smoking cannabis is not conducive to selling it, the indicia of cannabis use cut against a finding of intent to deliver the cannabis outside of the hoodie.

¶ 53    As to the cannabis within Brown-Coenic's hoodie, the only reasonable inference supported by the evidence was that he intended to sell it. He testified that the drugs in the hoodie were his, including that he intended to sell the cocaine, and his testimony was unrebutted. The evidence showed that he wore the hoodie to the apartment, and he had the police retrieve it for him after he was told he was free to leave—leading to his own arrest and subsequent negotiated plea for possession of a controlled substance. The State presented no evidence that defendant and Brown-Coenic were in a drug-dealing partnership or a veritable joint venture. There was also no evidence that defendant placed the drugs in his hoodie. Rather, the evidence supported only that defendant brought the cannabis to the apartment in his hoodie, that the hoodie was present in an area under defendant's control between when he arrived and when the police arrived several hours later, and that she had access to and control of the hoodie during that limited period. Although this was sufficient to prove her constructive possession of the cannabis in the hoodie, it was not sufficient to support her intent to deliver it.[2]

_____

[2] We note that, in order to have imputed Brown-Coenic's intent to defendant, the State would have had to advance and prove a theory of accountability at trial. *People v. Johnson*, 2013 IL App (4th) 120162, ¶ 32 ("[I]ntent to deliver as a mental state can be imputed only where the State's theory of the case is one of accountability."). The State did not pursue an accountability theory in this case.

¶ 54　Furthermore, the State's other-crimes evidence of defendant's 2016 arrest (but not conviction) for possession with intent to deliver cocaine was insufficient on its own to connect her constructive possession of the cannabis in Brown-Coenic's hoodie to an intent to deliver. See *Thomas*, 2019 IL App (2d) 160767, ¶ 23 (other crimes evidence can be used to help prove intent to deliver). Likewise, evidence that defendant had a single soda can consistent with storing cannabis in her bedroom did not translate into an intent to deliver the cannabis in Brown-Coenic's hoodie. There simply was no evidence that reasonably supported her intent to deliver Brown-Coenic's cannabis. Accordingly, we reverse defendant's conviction on count IV for possession of cannabis with intent to deliver.

¶ 55　As a final matter, we note that in convicting defendant of possession of cannabis with intent to deliver, the trial court should not have entered a separate judgment of conviction for simple possession of cannabis. As the trial court recognized during its findings of guilt, possession of cannabis is a lesser-included offense of possession with intent to deliver (*People v. Birge*, 137 Ill. App. 3d 781, 790 (1985)), and therefore it was improper to convict on both offenses (*People v. Miller*, 238 Ill. 2d 161, (2010)). However, because we reverse the trial court's judgment for possession of cannabis with intent to deliver, we simply leave in place defendant's conviction on count IX for simple possession of cannabis.

¶ 56　　　　　　　　　　　　　III. CONCLUSION

¶ 57　For the reasons stated, the judgment of the circuit court of McHenry County is affirmed on counts V, VI, VII and IX and reversed on count IV.

¶ 58　Affirmed in part and reversed in part.